**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Stephanie J. SALTER, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 10, 2014.
Filed Aug. 4, 2015.
Reargument Denied Oct. 14, 2015.

Stephanie E. Lombardo, Assistant District Attorney, York, for Commonwealth, appellant.

Timothy M. Barrouk, Harrisburg, for appellee.

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN, and STABILE, JJ.

OPINION BY STABILE, J.:

The Commonwealth appeals from the March 17, 2014 order of the Court of Common Pleas of York County granting Appellee, Stephanie J. Salter's, motion to suppress evidence obtained following a traffic stop. We reverse and remand for proceedings consistent with this opinion.

In relevant part, the trial court summarized the facts and the procedural history of the case as follows:

In the early morning hours of September 21, 2013, Officer Corey Sheaffer was on routine patrol when he observed that the vehicle ahead of him did not have lights illuminating the license plate.[1]

To confirm his suspicion that the lights were in fact not working, Officer Sheaffer turned off his headlights, which "confirmed" his suspicion. At this point, Officer Sheaffer decided to conduct a traffic stop on the vehicle. After the vehicle pulled over, Officer Sheaffer approached the vehicle and spoke with the driver, who he identified as [Appellee]. [Appellee] provided the officer with all necessary documentation, and it was at this point that the officer ... "noticed an odor of intoxicating beverage emanating from inside the vehicle." Along with the smell, Officer Sheaffer observed [Appellee]'s eyes were glassy and bloodshot, which prompted him to ask [Appellee] how much she had had to drink. [Appellee] admitted that she had two glasses of wine.... At this point, the officer asked [Appellee] to submit to four field tests[.2] ... After [Appellee] performed all four tests, Officer Sheaffer placed [Appellee] under arrest for driving under the influence of alcohol.

Trial Court Opinion, 6/5/14, at 2–3 (citations to the record omitted).

After the magisterial district court bound over all charges,[3] the trial court conducted a hearing on Appellee's motion to suppress evidence. Following the hearing, the trial court found the officer had reasonable suspicion to conduct a traffic stop,[4] but it suppressed the evidence of the

---

1. "[H]e was approximately 75 feet behind [Appellee]'s vehicle when he observed the lack of illumination from around the license plate." Trial Court Opinion, 6/5/14, at 6.

2. The tests included the Horizontal Gaze Nystagmus (HGN), walk and turn, one-leg stand, and the Rhomberg balance tests.

3. 75 Pa.C.S.A. § 3802(a)(1) (DUI—general impairment), and 75 Pa.C.S.A. § 3802(c) (DUI—highest rate of alcohol, second offense).

4. At the conclusion of the hearing, the trial court noted:

We conclude that the officer did have reasonable suspicion given the lack of apparent illumination, and the fact he did turn off his lights to try to double check, the officer did have reasonable suspicion to stop the vehicle to investigate further at that point whether or not the license plate—the registration light was out.

Given that, obviously once the stop was made, he had the right to approach the driver, ask the questions he did, so for [sic]

Blood Alcohol Content (BAC) test because the officer did not have probable cause to arrest Appellee for driving under the influence (DUI). The Commonwealth timely appealed.[5]

In its Rule 1925(a) opinion, the trial court, in addition to reiterating the propriety of the suppression of the BAC test result, also added, for the first time, that the officer lacked probable cause to conduct a traffic stop for Appellee's failure to have her vehicle's license plate illuminated.

On appeal, the Commonwealth raises the following issues:

1.  Did the suppression court err in reversing its earlier order in its 1925(a) opinion?

2.  Did the suppression court err in granting [Appellee]'s omnibus pretrial motion by finding that the initial stop was not supported by probable cause?

Appellant's Supplemental Brief at 4.[6]

■ We do not need to address the first issue because we conclude the trial court erred in finding the officer did not have probable cause to stop Appellee.

In its Rule 1925(a) opinion, the trial court, in concluding that the officer did not have probable cause to conduct a traffic stop, reasoned as follows:

> In the present case, Officer Sheaffer testified that while he was behind [Appellee]'s vehicle he noticed that her license plate was not illuminated. To confirm that the lights were in fact not

working, Officer Sheaffer turned off his headlights, which he testified, did "confirm" his suspicion. However on cross-examination, Officer Sheaffer testified that he was approximately 75 feet behind [Appellee] when he decided to pull her over for failing to have her license plate illuminated. This type of violation requires no further investigation after the stop.

Section 4303 of the Pennsylvania Motor Vehicle Code requires that license plate lamps be operational "in conformance with [ ] regulations of the [Department of Transportation]." 75 Pa.C.S.A. § 4303(b). The applicable regulation of the Department requires that if a vehicle is equipped with a license plate lamp, it "shall emit white light and *make the registration plate visible from a distance of 50 feet to the rear of the vehicle.*" 67 Pa.Code § 175.66(k).... There is no requirement that the *lamp* itself be visible from a distance of 50 feet. As stated above, Officer Sheaffer estimated that he was 75 feet behind [Appellee] when he initiated his traffic stop. There is no testimony in the record that Officer Sheaffer verified that the license plate did not illuminate the license plate closer than 75 feet.

Accordingly, we conclude that the record does not contain testimony which would support a finding of probable cause to stop [Appellee]'s vehicle for the violation of failing to have a license plate illuminated.

---

> that basis, we will not conclude that the officer lacked legal cause to stop the vehicle to investigate the license plate issue.
>
> N.T. Suppression, 3/17/14, at 60–61.

5.  In its Statement of Jurisdiction, the Commonwealth states the order appealed here is final pursuant to 42 Pa.C.S.A. § 742. It is in fact an interlocutory order from which the Commonwealth has an appeal as of right.

*See* Pa.R.A.P. 311(d). Despite the error, in its Notice of Appeal, the Commonwealth did include a Rule 311(d) certification. This appeal is therefore properly before us.

6.  In its original brief, the Commonwealth also challenged the trial court's suppression of the BAC result, which we will address following the discussion of the issues raised in the supplemental brief.

Trial Court Opinion, 6/5/14, at 5–6 (citation to Notes of Testimony omitted) (emphasis in original). We disagree.

Our standard of and scope of review in suppression matters is well-settled:

When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. Because Appellee prevailed in the suppression court, we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, "[t]he suppression court's conclusions of law ... are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts." As a result, the conclusions of law of the suppression court are subject to plenary review.

*Commonwealth v. Dean*, 940 A.2d 514, 516 (Pa.Super.2008) (internal quotations and citations omitted).

In Pennsylvania, the authority that addresses the requisite cause for a traffic stop is statutory and is found at 75 Pa. C.S.A. § 6308(b), which provides:

(b) **Authority of police officer.—** Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b). In *Commonwealth v. Feczko*, 10 A.3d 1285 (Pa.Super.2010) (*en banc*), this Court, consistent with our Supreme Court's clarification of constitutional principles under the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution, stated with respect to § 6308(b):

In light of our Supreme Court's interpretation of the current language of Section 6308(b), we are compelled to conclude that the standards concerning the quantum of cause necessary for an officer to stop a vehicle in this Commonwealth are settled; notwithstanding any prior diversity on the issue among panels of this Court. Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose. (footnote and citation omitted).

\*     \*     \*

Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, "it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, *which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.*" [*Commonwealth v.] Gleason* [567 Pa. 111], 785 A.2d [983,] 989 [ (Pa.2001) ]

(citation omitted)[, *superseded by statute*, Act of Sept. 30, 2003, P.L. 120, No. 24, § 17 (amending 75 Pa.C.S.A. § 6308(b)) ].

*Id.* at 1290–1291 (emphasis added in *Gleason* ). Accordingly, when considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop. Illustrative of these two standards are stops for speeding and DUI. If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway. On the other hand, if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a Vehicle Code violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance. *Compare Commonwealth v. Enick,* 70 A.3d 843, 846 (Pa.Super.2013) (probable cause required to stop for failure to drive on right side of roadway), *Commonwealth v. Brown,* 64 A.3d 1101, 1105 (Pa.Super.2013) (probable cause required to stop for failure to use turn signal), *Commonwealth v. Busser,* 56 A.3d 419, 424 (Pa.Super.2012) (probable cause required to stop for failure to yield to emergency vehicles), *and Feczko,* 10 A.3d at 1291 (probable cause required to stop for failure to maintain lanes), *with*

*Commonwealth v. Holmes,* 609 Pa. 1, 14 A.3d 89, 96–97 (2011) (reasonable suspicion sufficient to stop to investigate front windshield obstruction); *Commonwealth v. Bailey,* 947 A.2d 808, 812–14 (Pa.Super.2008) (reasonable suspicion sufficient to stop to investigate faulty exhaust system or muffler); *see also Commonwealth v. Landis,* 89 A.3d 694, 703 (Pa.Super.2014) (noting that where trooper stopped motorist for failing to drive within a single lane—and not to investigate possible DUI—he needed probable cause to stop). With these guiding principles and examples in mind, we now turn to the examination of the Vehicle Code violation subject of this appeal.

In relevant part, Section 4303 of the Vehicle Code states that "[e]very vehicle operated on a highway shall be equipped with a rear lighting system including, but not limited to, rear lamps, rear reflectors, stop lamps and license plate light, in conformance with regulations of the department." 75 Pa.C.S.A. § 4303(b). Department regulations at 67 Pa.Code §§ 175.80(a)(9)(i) and 175.66(k) provide a vehicle is not in compliance with the Vehicle Code if "[a]n exterior bulb or sealed beam, if originally equipped or installed, fails to light properly," and "the registration plate lamp shall emit white light and make the registration plate visible from [a] distance of 50 feet to the rear of the vehicle."

█ In this case, Officer Sheaffer determined the license plate lamp was out, which meant the plate was not illuminated, which in turn meant that the registration plate could not have been visible from a distance of 50 feet to the rear of the vehicle at 3:00 a.m. Officer Sheaffer possessed probable cause to stop Appellee's vehicle, as this was a violation of the Vehicle Code. Nothing more needed to be determined by Officer Sheaffer upon a stop

to verify that the plate light was not operating. It is of no moment that the officer was 75 feet away from the vehicle when he determined the plate was not illuminated, or that Officer Sheaffer did not verify the license plate light did not illuminate the license within the required 50 feet prior to the stop. "[P]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." *Commonwealth v. Spieler*, 887 A.2d 1271, 1275 (Pa.Super.2005) (quotation omitted). Here, while Officer Sheaffer initially merely suspected the traffic violation at issue, he was able to confirm the violation by driving within 75 feet of Appellee's vehicle and turning his headlights off. Once he turned his headlights off, he indeed confirmed the plate was not illuminated. The lights were out. Although observed from 75 feet, this observation provided sufficient trustworthy facts to reasonably believe the lights also were out at 50 feet. *See id.; see also Commonwealth v. Anderson*, 224 Pa.Super. 19, 302 A.2d 504, 506 (1973) ("The probable cause necessary to support an arrest ... cannot demand the same strictness of proof as the accused's guilt upon a trial[.]") (quotation omitted). This was sufficient to justify the traffic stop based upon probable cause that there was a violation of the applicable regulation.

■ Admittedly, determination of the required constitutional standard for a vehicle stop is not as clear here as in the case of speeding or driving while under the influence of alcohol. It is possible, given the nature of this violation and the conditions under which plate illumination may be observed, that an officer may have to stop a vehicle to investigate further if a violation exists. Reasonable suspicion requires only that the officer have sufficient knowledge to believe a traffic violation has

occurred in order to conduct a brief investigative stop. *See Feczko*, 10 A.3d at 1291 (noting an officer may, consistent with § 6308(b), perform a traffic stop "to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of [the Vehicle Code]"). For instance, fog, rain, time of day, or obstructions impeding or blocking view of the plate illumination might prevent a clear determination if a lighting violation exists. If reasonable suspicion exists that such a violation is present, but a stop is required to confirm the violation, then probable cause is not needed and reasonable suspicion may be sufficient. Those facts are not present here, as Officer Sheaffer testified that he observed the plate lights to be out. The trial court here understandably vacillated between whether probable cause or reasonable suspicion was sufficient for Officer Sheaffer to make this stop due to the nature of this Vehicle Code violation. Since Officer Sheaffer did not need to stop Appellee's vehicle to investigate further to determine if the plate lights were out, he possessed probable cause to legally make the stop.

■ We next address whether the trial court erred in suppressing the BAC result.[7] The trial court found that Officer Sheaffer did not have probable cause to arrest Appellee for several reasons, which we have addressed below. The thrust of the trial court's decision, however, can be summarized in the following statement: "The totality of circumstances including the officer's observations of lack of impairment, and the lack of meaningful field sobriety test results, compelled us to conclude that probable cause was lacking to arrest [Appellee] and request a chemical test." Trial Court Opinion, 6/5/14, at 11. We disagree.

---

**7.** The accuracy of the BAC test result is not at issue.

The trial court found the officer did not have probable cause to arrest Appellee because he did not observe erratic driving and slurred speech. These circumstances, along with the "irrelevan[ce]" of the field sobriety tests for purposes of establishing probable cause,[8] led the trial court to conclude that the officer did not observe signs of intoxication to warrant Appellee's arrest.

In its opinion, the trial court placed significant weight on erratic driving in determining probable cause to arrest for DUI. Trial Court Opinion, 6/5/14, at 10. Erratic driving is not a superfactor, much less one determinative of DUI. "Evidence of erratic driving is not a necessary precursor to a finding of guilt [for driving under influence (DUI)-general impairment.]" Commonwealth v. Mobley, 14 A.3d 887, 890 (Pa.Super.2011). Similarly, slurred speech, alone, may not determine impairment. See Commonwealth v. Segida, 604 Pa. 103, 985 A.2d 871 (2009).[9] The applicable standard for determining probable cause calls for a totality of circumstances analysis, not a mechanical consideration of specific factors. See, e.g., Commonwealth v. Dommel, 885 A.2d 998, 1002 (Pa.Super.2005).

In the absence of erratic driving and slurred speech, the trial court believed that bloodshot/glassy eyes, odor of alcohol emanating from the vehicle, Appellee's admission that she had "two" glasses of wine, and poor performance on the sobriety tests were not reliable clues of impairment and, therefore, insufficient to warrant Appellee's arrest under suspicion of DUI. We disagree. "[P]robable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent [persons] act." Commonwealth v. Angel, 946 A.2d 115, 118 (Pa.Super.2008) (quotation omitted). In light of the circumstances observed, and the officer's experience and training relating to DUI traffic stops, we conclude that the officer had probable cause to arrest Appellee for DUI.

We now address the second part of the trial court's conclusion: the irrelevance of the field sobriety tests for purposes of establishing probable cause. The trial court discounted the officer's observations of Appellee's performance of the field sobriety tests because the officer could not articulate, to the trial court's satisfaction, the significance of Appellee's deviation from the field sobriety standards. The trial court also doubted the reliability of these tests, and the unstandardized way they are administered by police officers.

A review of the record reveals that the officer did explain the tests, their administration and purposes, and how Appellee performed. The officer, however, was not able to articulate, according to the trial court, adequate reasons for their reliability.

The trial court questioned the reliability of standardized field sobriety tests for purposes of establishing probable cause to arrest for DUI because they fail to show "correlation to what they demonstrate with regard to alcohol (or drug) impaired driv-

---

**8.** We will address the trial court's position on the field sobriety tests below.

**9.** In Segida, the Supreme Court noted:
The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution **include but are not limited to**, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech.
Segida, 985 A.2d at 879 (emphasis added).

ing." Trial Court Opinion, 6/5/14, at 11; see also id. at 8, 10.

The trial court seems to ignore that our caselaw recognizes that field sobriety tests, such as those administered here,

> are grounded in theories which link an individual's lack of coordination and loss of concentration, with intoxication. This inter-relationship is also recognized in what is generally accepted as the common indicia of intoxication, within the understanding and experience of ordinary people. In fact, non-expert testimony is admissible to prove intoxication where such testimony is based upon the witness' observation of the defendant's acts and speech and where the witness can opine as to whether the defendant was drunk.

*Commonwealth v. Ragan*, 438 Pa.Super. 505, 652 A.2d 925, 928 (1995).

The trial court commented on the Commonwealth's failure to produce "testimony regarding the percentage of actually impaired drivers who have bloodshot/glassy eyes, or what percentage of actually impaired driver fail the field sobriety tests generally." Trial Court Opinion, 6/5/14. The trial court misses the point on what the Commonwealth had to prove at that procedural juncture (*i.e.*, suppression hearing) and the burden of proof required at that proceeding.

▇▇▇ First, as noted above, these tests are generally accepted methods for ascertaining alcohol or drug impairment at the time of a traffic stop. *See Ragan, supra.* Second, the trial court fails to account for the Commonwealth's burden of proof at a suppression hearing. At a suppression hearing, "the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible." *Commonwealth v. Simmons*, 17 A.3d 399, 402 (Pa.Super.2011). Third, and equally im-

portant, the trial court also seems to ignore that

> [t]here is a clear distinction between what is required for purposes of establishing probable cause for a warrantless arrest or search and what is required for proving guilt. The arresting officer need not have had in hand evidence which would suffice to convict, as it is only the probability, and not a prima facie showing of criminal activity that is the standard for justifying arrest. The probable cause necessary to support an arrest ... cannot demand the same strictness of proof as the accused's guilt upon a trial[.]

*Anderson*, 302 A.2d at 506 (internal quotations and citations omitted); *accord Brinegar v. United States*, 338 U.S. 160, 174–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (explaining the difference between probable cause and proof beyond a reasonable doubt).

The trial court also noted that these field sobriety tests are not, in fact, standardized in their administration, and the decision to arrest ultimately depends on the officer's subjective observations, which, in the trial court's view, is improper. Trial Court Opinion, 6/5/14, at 11.

▇▇▇ The field sobriety tests are not meant to ascertain with certainty a driver's BAC, but only to provide the officer with information useful to determine whether the driver is impaired. *See Ragan, supra.* The determination whether to arrest for DUI must be made by the officer in light of the circumstances surrounding the traffic stop. Probable cause to arrest exists

> when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an

offense has been committed by the person to be arrested. Probable cause justifying a warrantless arrest is determined by the totality of the circumstances. *Commonwealth v. Williams,* 941 A.2d 14, 27 (Pa.Super.2008) (internal citations and quotation marks omitted).

> It is the facts and circumstances **within the personal knowledge of the police officer** that frames the determination of the existence of probable cause. *See, e.g., Commonwealth v. Lawson,* 454 Pa. 23, 27, 309 A.2d 391, 394 (1973) ("Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed.").

*Commonwealth v. Galendez,* 27 A.3d 1042, 1046 (Pa.Super.2011) (*en banc*) (emphasis in original).

*Commonwealth v. Weaver,* 76 A.3d 562, 565 (Pa.Super.2013), *aff'd per curiam,* — Pa. —, 105 A.3d 656 (2014).

■ To the extent the trial court suggests the officer did not have probable cause to arrest Appellee because Appellee did not fail the field tests, it is worth noting that failing these tests is not a requirement for a determination of probable cause. *Commonwealth v. Slonaker,* 795 A.2d 397, 402 (Pa.Super.2002) ("[T]he law is well settled that reasonable grounds to arrest does not require the failure of field sobriety tests.").[10] Nonetheless, performing poorly may be sufficient for a finding of impairment. *See Commonwealth v. Downing,* 739 A.2d 169, 173 (Pa.Super.1999) ("Appellant demonstrated his impairment by doing poorly on three field sobriety tests.").

■ The trial court also was bothered by the fact that the officer did not ask Appellee whether she had any medical condition that could affect her ability to perform the HGN test. While the trial court does not elaborate on the legal relevance of this fact, it seems to imply that the officer was under a duty to do so. The trial court, however, provided no authority for any such duty. Additionally, there is no indication in the record that Appellee notified the officer of any medical condition that could have precluded or limited her ability to perform the field sobriety tests, nor is there any mention of a circumstance that could have alerted the officer of a medical condition affecting Appellee. In fact, Appellee did not argue she had a medical condition preventing her to perform the tests. Appellee argued, and the trial court apparently agreed, that her poor performance on the HGN test could have been caused by reasons other than intoxication. Similarly, the trial court emphasized that "[a]s admitted by the District Attorney and the officer, bloodshot/glassy eyes can be caused by numerous other things that do not include intoxication." Trial Court Opinion, 6/5/14, at 10. Even if Appellee's inability to perform could have other explanations, this circumstance, alone, does

---

**10.** Regarding the HGN test, the officer testified that he observed lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, and the onset of nystagmus prior to 45 degrees. N.T. Suppression, 3/17/14, at 15. Regarding the walk and turn test, the officer noted that while he was giving Appellee instructions on how to perform it, Appellee swayed side-to-side. During the performance of this test, Appellee lifted her right arm several times and did not touch her heel to her toe on every step, as requested. *See* Trial Court Opinion, 6/5/14, at 2–3. Regarding the one-leg stand test, the officer testified that Appellee again swayed, and raised her right arm, despite the fact she was told to keep her hands on her sides. Appellee substantially completed the fourth test (the Rhomberg balance test). N.T. Suppression, 3/17/14, at 20.

not make the officer's decision to arrest on suspicion of DUI unreasonable. As stated earlier, probable cause "exists when criminality is one reasonable inference—not necessarily even the most likely inference." *Spieler*, 887 A.2d at 1275; *see also Commonwealth v. Dennis*, 417 Pa.Super. 425, 612 A.2d 1014, 1016 (1992) ("[W]e must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act."); *Commonwealth v. Kendrick*, 340 Pa.Super. 563, 490 A.2d 923, 927 (1985) ("[Probable cause] does not demand any showing that such a belief be correct or more likely true than false.").

In light of the foregoing, we conclude that the officer had probable cause to conduct a traffic stop because Appellee's license plate was not illuminated and, subsequently, for arresting Appellee under suspicion of DUI. Accordingly, we reverse the order of the trial court and remand for proceedings consistent with this opinion.

Order reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

P.J.E. FORD ELLIOTT joins the opinion.

J. SHOGAN files a concurring statement.

CONCURRING STATEMENT BY SHOGAN, J.:

I question whether the police officer had probable cause to conduct the traffic stop due to the officer being seventy-five feet from Appellee's vehicle at the time he determined that the registration plate was not illuminated. The traffic regulation in question requires only that the lights "make the registration plate visible from [a] distance of 50 feet to the rear of the vehicle," not 75 feet. *See* 67 Pa.Code § 175.66(k). However, because I conclude that the officer had at least reasonable suspicion to believe that the license plate lamps were not functioning properly, the traffic stop was proper, and because I conclude that the officer had probable cause to arrest Appellee for DUI, I concur in the result reached by the Majority.