J-A33003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RONALD CARL ENYEART | |
| Appellant | No. 90 WDA 2016 |

Appeal from the Judgment of Sentence December 18, 2015
In the Court of Common Pleas of Clearfield County
Criminal Division at No(s): CP-17-CR-0000212-2015

BEFORE:  LAZARUS, J., SOLANO, J., and STRASSBURGER, J.[*]

DISSENTING MEMORANDUM BY LAZARUS, J.:          **FILED JULY 19, 2017**

I respectfully dissent.  In my opinion, the initial stop was unlawful, requiring exclusion of all evidence seized as a result.  I would reverse the judgment of sentence.

As the trial court points out, the video shows a "few instances" of Enyeart's vehicle "nudging the center line," and one instance where Enyeart's right tires cross the fog line on the right after negotiating a curve in the road.  ***See*** Trial Court Opinion, 4/13/16, at 2.  According to his preliminary hearing testimony, Trooper Michael Gregory Meko noticed the odor "of an adult alcoholic beverage, and marijuana[.]"  N.T. Preliminary

_____

[*] Retired Senior Judge assigned to the Superior Court.

Hearing, 3/20/15, at 6. Trooper Meko then ordered Enyeart out of the vehicle to perform field sobriety tests. Trooper Meko testified:

> Q: . . . [W]hat were the results of those tests?
>
> A: . . .[T]hrough the uh, horizontal nystagmus, one legged stand, and walk and turn he showed enough clues that showed that he was probably over the legal limit to, for a DUI.

*Id.* at 7.

Trooper Meko placed Enyeart under arrest and transported him to Penn Highlands Hospital, where his blood was drawn.[1] Enyeart filed a motion to suppress, which was denied. As the majority points out, at trial, the Commonwealth presented forensic toxicologist Ayako Chan-Hosokawa, who testified that the margin of error in the BAC testing was between 6 and 7 percent. N.T. Trial, 11/5/15, at 101. At the close of the Commonwealth's case, the court granted Enyeart's motion for demurrer on the charge of DUI-general impairment (BAC .08–.10), 75 Pa.C.S.A. § 3802(a)(2). Enyeart admitted at trial that he had smoked marijuana earlier that day. The jury convicted him of Driving Under the Influence of a Controlled Substance

---

[1] As the majority notes, Trooper Meko gave Enyeart the *O'Connell* warnings and read Enyeart the DL-26 form (Chemical Testing Warnings), which includes Pennsylvania's Implied Consent laws and a statement that the operator could face increased criminal penalties for refusing a blood draw. *See* N.T. Trial, 11/5/15, at 51. Enyeart consented to a blood draw, which revealed the presence of marijuana components (THC), a Schedule I Controlled Substance, and a blood alcohol content (BAC) of .082. *See* N.T. Trial, 11/5/15, at 92. *See also* 35 P.S. § 780-104; 75 Pa.C.S.A. § 3802(d)(1)(i).

(DUI), under 75 Pa.C.S.A. § 3802(d)(1)(i).[2] The trial court found Enyeart not guilty of the summary offenses of Careless Driving[3] and Roadways Laned for Traffic.[4]

In denying Enyeart's suppression motion, the trial court found that Trooper Meko had "reasonable suspicion" to believe that Enyeart was violating the Vehicle Code, in particular, driving under the influence. The court stated:

> Officer Meko's credible testimony that the Defendant was swerving in his lane of travel; that the Defendant's vehicle straddled the center line; that the Defendant's vehicle crossed the white fog line; coupled with the dash-cam video that showed some similar driving was sufficient to lead him to reasonably suspect that the driver of the vehicle may be intoxicated.

Trial Court Opinion, 4/1/16, at 3.

_____

[2] Section 3802(d)(1)(i) of the Vehicle Code provides:

> **(d) Controlled substances**.--An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> (1) There is in the individual's blood any amount of a:
>
> (i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64),1 known as The Controlled Substance, Drug, Device and Cosmetic Act[.]

[3] 75 Pa.C.S.A. § 3714(a).

[4] 75 Pa.C.S.A. § 3309.

Reasonable suspicion is a less stringent standard than the probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. *Commonwealth v. Rogers*, 849 A.2d 1185, 1189 (Pa. 2004); *Commonwealth v. Salter*, 121 A.3d 987, 993 (Pa. Super. 2015). In order to justify the seizure, a police officer must be able to point to "specific and articulable facts" leading him to suspect criminal activity is afoot. *Commonwealth v. Melendez*, 676 A.2d 226, 228 (Pa. 1996) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience." *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa. 1999).

Thus, under the present version of section 6308(b) of the Vehicle Code, in order to establish reasonable suspicion, an officer must be able to point to specific and articulable facts that led him to reasonably suspect a violation, in this case, driving under the influence of alcohol or a controlled substance. "The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a 'particularized and objective basis' for suspecting the individual stopped." *Commonwealth v. Reppert*, 814 A.2d 1196, 1203 (Pa. Super. 2002) Therefore, the fundamental inquiry of a reviewing court must be an objective one, "namely, whether 'the facts available to the officer

at the moment of the [stop] warrant a man of reasonable caution in the belief that the action taken was appropriate.'" ***Id.*** (quoting ***Commonwealth v. Zhahir***, 751 A.2d 1153, 1156 (Pa. 2000)).

Here, Trooper Meko testified that Enyeart's vehicle "appeared to be swerving on the roadway." N.T. Suppression Hearing, 8/25/15, at 4. Trooper Meko testified that Enyeart's vehicle was "straddling the yellow center turning lane, slightly going across it." ***Id.*** Trooper Meko then activated his MVR, and at that point he observed Enyeart's vehicle "slightly nudging the center turning lane[.]" ***Id.*** at 8. He also observed Enyeart's vehicle "crossing the fog line as it came out of the turn." ***Id.***[5]

Our Supreme Court has stated:

> the limited intrusion permitted by [75 Pa.C.S.A. §] 6308(b) in the case of a vehicular stop based upon a reasonable suspicion that the driver is driving under the influence, as balanced against the Commonwealth's salutary interest in preventing DUI violations, violates neither the Fourth Amendment nor Article I, Section 8. **In such cases, the officer must be able to relay specific and articulable facts that would give rise to a reasonable suspicion that the person is driving under the influence**, and we conclude that this requirement is sufficient to ensure that the police do not infringe upon the citizens' rights to be free from unreasonable searches and seizures.

---

[5] At the preliminary hearing, however, Trooper Meko testified that he was "pretty sure the entire stop was on [the video]. . . .[i]ncluding the driving and the observations." N.T. Preliminary Hearing, 3/20/15, at 10.

*Commonwealth v. Sands*, 887 A.2d 261, 271-72 (Pa. 2005) (emphasis in original).

In *Sands*, the arresting officer stopped the appellant's vehicle based upon a suspected DUI. *Id.* at 263. In the early morning hours, the officer observed that on three occasions, the appellant's vehicle drifted across the fog line, extending approximately three feet into the berm. *Id.* The officer stated that the appellant's "inability to maintain a straight trajectory within the right lane of travel" and his "weaving onto the eastbound berm, indicated that he might strike one of the stationary objects located along [the highway]." *Id.* The officer was particularly concerned that the appellant's vehicle "would strike the power source generator or the adjacent utility pole." *Id.* We concluded the officer had reasonable suspicion that the appellant was driving under the influence, thus justifying the traffic stop.

By contrast, here, Trooper Meko acknowledged that there was no traffic. He did not indicate that there were any safety concerns. He also acknowledged that Enyeart's vehicle did not make any sudden movements, but stated that the basis for his stop was "the entirety of the circumstances." N.T. Suppression Hearing, *supra* at 10. *Cf. Commonwealth v. Hughes*, 908 A.2d 924 (Pa. Super. 2006) (officer had reasonable suspicion to stop defendant for DUI where officer observed defendant's vehicle swerving across divided line into other lane on three occasions).

In my opinion, Trooper Meko's testimony that there was momentary "nudging" of the center line and a brief crossing of the fog line after

negotiating a curve in the road, along with his equivocal observations prior to starting the MVR, is insufficient to establish reasonable suspicion that Enyeart was driving under the influence of alcohol or a controlled substance. Having studied the record, particularly Trooper Meko's dash cam video, I would find that the record does not support the trial court's finding that Trooper Meko had reasonable suspicion to stop Enyeart for DUI.