J-S13045-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                    :  PENNSYLVANIA
                                    :

            v.                         :
                                    :
                                    :

JULIO CEASAR SEGURA JR.       :
                                    :

            Appellant         :   No. 2902 EDA 2022

Appeal from the Judgment of Sentence Entered October 24, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0000314-2021

BEFORE:   NICHOLS, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:         **FILED MAY 25, 2023**

Appellant Julio Ceasar Segura, Jr.[1] appeals from the judgment of sentence entered by the Court of Common Pleas of Montgomery County after he was convicted of recklessly endangering another person (REAP), fleeing or attempting to elude a police officer, persons not to possess a firearm, firearms not to be carried without a license, and vehicle code violations. Appellant claims the trial court erred in denying his suppression motion which was based on his challenge to the legality of the stop of his vehicle. We affirm.

The trial court summarized the factual background of the case as follows:

---

[*] Former Justice specially assigned to the Superior Court.
[1] Appellant's name may be misspelled in the trial court's caption. However, as it does not appear that Appellant filed any motion to correct the caption, we utilize the caption reported by the trial court.

On November 23, 2020, at approximately 1:17 a.m., Pennsylvania State Troopers Jason Henley and Seth Heffner were on patrol in the area of East High Street in Pottstown, PA when they observed a silver Cadillac sedan (the "Cadillac") which did not have a functioning registration lamp. The troopers also observed the Cadillac weaving within its lane of travel. The Cadillac subsequently approached a signalized intersection at Sunnybrook Road. Despite the traffic light's display of a steady green light, the Cadillac almost came to a complete stop at the intersection.

Trooper Henley activated his emergency siren and lights and attempted to effectuate a traffic stop. The Cadillac began to pull over to the side of the roadway but subsequently reentered the travel lanes on High Street and drove away at a high rate of speed. The Cadillac proceeded to drive in the center of the roadway and drove through a steady red light at the South Pleasantview Road intersection. The Cadillac nearly drove into oncoming traffic lanes, and traveled at speeds exceeding 115 miles per hour. The Cadillac also drove through a steady red light at the Rupert Road intersection as two (2) vehicles were stopped at the light.

Eventually, the Cadillac traveled onto West Ridge Pike, where it spun out and crashed into a guard rail. Trooper Henley proceeded to execute a "PIT" maneuver which caused the Cadillac to come to a stop in the roadway's grassy median. The troopers subsequently approached the Cadillac and the driver, later identified as [Appellant], who stated "I can't stop it, it won't stop, I've got a gun on me." [Appellant] also informed the troopers that the gun was "under the hoodie" located inside the vehicle. While placing [Appellant] into custody, authorities uncovered a loaded firearm from the vehicle which was wrapped inside a hooded sweatshirt.

Trial Court Opinion (T.C.O.), 1/11/23, at 1-2.

After Appellant was charged in this case, Appellant filed a motion to suppress the firearm seized from the Cadillac. The trial court denied the suppression motion following a hearing.

On July 7, 2022, the trial court conducted a bifurcated trial at which the jury convicted Appellant of REAP, fleeing or attempting to elude an officer,

and firearms not to be carried without a license. Appellant stipulated that if the jury found he was in possession of a firearm, he was also guilty of persons not to possess a firearm based on his prior burglary conviction.

On October 24, 2022, the trial court sentenced Appellant to an aggregate term of seven to fourteen years' imprisonment. Appellant filed a timely appeal and complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises one issue for our review on appeal:

> Whether the trial court erred in denying Appellant's motion to suppress where he was seized without probable cause that he committed a Vehicle Code violation nor reasonable suspicion that he was driving under the influence because the dash camera video shows that Appellant's license plate was clearly illuminated and that he merely slowed while approaching an intersection?

Appellant's Brief, at 6.

Appellant's sole claim on appeal is that the trial court erred in denying his suppression motion. Appellant alleges that the arresting officer's dash camera recording does not support the finding that there was probable cause to stop his vehicle. We review a trial court's denial of a suppression motion under the following standard:

> [o]ur standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are

- 3 -

supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Johnson*, 146 A.3d 1271, 1273 (Pa.Super. 2016) (citation omitted).

With respect to vehicle stops based on suspected violations of the motor vehicle code, Section 6308(b) of the Vehicle Code provides:

**(b) Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).

In *Commonwealth v. Feczko*, 10 A.3d 1285 (Pa.Super. 2010), this Court further explained the state of the law with respect to vehicle stops:

Traffic stops based on a reasonable suspicion[,] either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b)[,] must serve a stated investigatory purpose. [*Commonwealth v.*] *Chase*, 960 A.2d [108,] 116 [(Pa. 2008)].

Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, "it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, *which would provide probable cause to believe that the vehicle or the driver was in violation of*

*some provision of the Code.*" [**Commonwealth v.**] **Gleason**, 785 A.2d [983,] 989 [(Pa. 2001)].

*Id*. at 1291.

This Court has further explained how to determine the quantum of suspicion required to stop a vehicle:

> when considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop. Illustrative of these two standards are stops for speeding and DUI. If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway. On the other hand, if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a Vehicle Code violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance.

*Commonwealth v. Salter*, 121 A.3d 987, 993 (Pa.Super. 2015).

Section 4303 of the Motor Vehicle Code, which sets forth general lighting requirements, provides in relevant part that "[e]very vehicle operated on a highway shall be equipped with a rear lighting system including, but not limited to, rear lamps, rear reflectors, stop lamps and license plate light, in accordance with regulations of the department." 75 Pa.C.S.A. § 4303(b). This Court has observed that "[d]epartment regulations at 67 Pa.Code §§ 175.80(a)(9)(i) and 175.66(k) provide a vehicle is not in compliance with the

Vehicle Code if '[a]n exterior bulb or sealed beam, if originally equipped or installed, fails to light properly," and "the registration plate lamp shall emit white light and make the registration plate visible from [a] distance of 50 feet to the rear of the vehicle.'" *Salter*, 121 A.3d 993.

In this case, Trooper Henley and Trooper Heffner testified that one of the reasons that caused them to initiate the traffic stop of Appellant's vehicle was their observation that Appellant's license plate lamp was not illuminated. In response, Appellant argues that the trial court erred in crediting the troopers' testimony, which Appellant claims was undermined by the dashcam recording from the troopers' patrol car. From Appellant's point of view, Appellant argues that the video shows that his license plate was clearly visible.

In addition, Appellant asserts that Trooper Henley should have turned the headlights of his vehicle off to confirm that Appellant's license plate lights were not working. Appellant further contends that Trooper Henley failed to corroborate his suspicion that the license plate light was not working after he had pulled over Appellant's vehicle. Thus, Appellant argues that the troopers did not demonstrate that they had probable cause that Appellant had violated Section 4303 when they activated their overhead lights to initiate the stop.

In upholding the vehicle stop, the trial court specifically found that the troopers gave credible and "unequivocal" testimony that the license plate lamp was not illuminated on the Cadillac. Trooper Henley specifically testified that "you can clearly see that [the registration lamp was] out" even though the

patrol car's headlights were illuminated. Notes of Testimony (N.T.), Suppression Hr'g, 6/30/22, at 13-14.

While Trooper Henley admitted that he did not turn off the lights of the patrol car to confirm that Appellant's license plate lamp was inoperable, the trial court found that this action was not required as Trooper Henley "steadfastly testified that he was still able to determine the lamp was not illuminated and turning off the headlights on the patrol vehicle would have created a safety issue." T.C.O. at 7.

The record supports the factual findings of the trial judge, who did review the dashcam footage and determined that the troopers' testimony was credible. On two occasions in the video, Trooper Henley narrated that he intended to pull Appellant over for having "no reg[istration] lamps."[2] Dashcam video at 00:00:49-00:00:55; 00:01:26-00:01:27. At the beginning of the video, the Cadillac's license plate is not illuminated and only becomes visible when Appellant's brake lights are activated and the troopers' vehicle is close enough to provide light upon the license plate from its headlights.

As Trooper Henley determined that Appellant's vehicle had no registration lamp and Appellant's license plate was not illuminated, Appellant's license plate would not have been visible from a distance of 50 feet at 1:17

---

[2] Trooper Henley also indicates that he intended to stop Appellant for "swerving all over the place … [and] coming to almost like a stop at a green light." Dashcam video at 00:00:49-00:00:55. We need not determine whether these other observations gave the troopers' the requisite suspicion to stop Appellant's vehicle, as their observation of his inoperable registration lamp was sufficient itself to justify the stop.

a.m. Because Trooper Henley did not need to investigate further to determine whether Appellant's license plate lamp was out, he had probable cause to initiate a traffic stop of Appellant's vehicle for a violation of Section 4303.[3] *Salter*, 121 A.3d at 994 (quoting *Commonwealth v. Spieler*, 887 A.2d 1271, 1275 (Pa.Super. 2005) (quotation omitted) (clarifying that "[p]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference").

_____

[3] While we uphold the trial court's finding in this case that Trooper Henley possessed probable cause to stop Appellant's vehicle after observing Appellant did not have a working registration lamp, we acknowledge that the requisite suspicion to justify a vehicle stop for a violation of Section 4303 varies based on the factual circumstances of the case.

> It is possible, given the nature of this violation and the conditions under which plate illumination may be observed, that an officer may have to stop a vehicle to investigate further if a violation exists. Reasonable suspicion requires only that the officer have sufficient knowledge to believe a traffic violation has occurred in order to conduct a brief investigative stop. *See Feczko*, 10 A.3d at 1291 (noting an officer may, consistent with § 6308(b), perform a traffic stop "to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of [the Vehicle Code]"). For instance, fog, rain, time of day, or obstructions impeding or blocking view of the plate illumination might prevent a clear determination if a lighting violation exists. If reasonable suspicion exists that such a violation is present, but a stop is required to confirm the violation, then probable cause is not needed and reasonable suspicion may be sufficient.

*Salter*, 121 A.3d at 994. However, if an officer observes a vehicle's license is not illuminated and the officer does not need to investigate further to determine whether the registration lamps were out, the officer possesses probable cause to justify the stop. *Id*.

Therefore, we conclude that the trial court did not err in denying Appellant's suppression motion.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 5/25/2023*