J-S09024-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| KEITH LOVELACE | : | |
| Appellant | : | No. 2373 EDA 2025 |

Appeal from the Judgment of Sentence Entered August 5, 2025
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0002823-2022

BEFORE: MURRAY, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:           **FILED APRIL 29, 2026**

Keith Lovelace ("Lovelace") appeals from the judgment of sentence, imposed following his non-jury trial convictions of possession with intent to deliver a controlled substance[1] ("PWID") and related offenses. We affirm.

The trial court provided the following undisputed factual summary adduced at the suppression hearing:

> During the afternoon of July 11, 2022, Lovelace was sitting in the backseat of a [rented] Chevrolet Equinox being driven by Paula Ptacek [("Ptacek")]. Brandon Lovelace [("Brandon"), Lovelace's brother], also [sat] in the backseat. They were travelling westbound on the Pennsylvania Turnpike, Interstate 76, in Tredyffrin Township, Chester County. They had departed Kensington, Philadelphia earlier that day and were bound for Pittsburgh, carrying in the vehicle two cellophane wrapped bundles of narcotics. Pennsylvania State Police Trooper Sean Fay [("Trooper Fay")] was driving behind them in his marked police

---

[*] Former Justice specially assigned to the Superior Court.

[1] *See* 35 P.S. § 780-113(a)(30).

vehicle. Trooper Fay estimated them to be traveling at approximately 64 miles per hour in a 70 mile-per-hour zone.

Th[is] relevant portion of the Turnpike contains two westbound lanes of travel. Ptacek, driving in the right lane, began approaching a box truck, and, desiring to move ahead of the truck, maneuvered from the right lane to the left lane, then moved back to the right lane after passing the truck. The vehicle signaled for an appropriate amount of time before moving to the left lane. However, when Ptacek passed the box truck, Trooper Fay witnessed the vehicle use its turn signal for less time than would be appropriate when moving back to the right lane. The affidavit of probable cause noted that the vehicle changed lanes immediately after activating its turn signal, which Trooper Fay believed to be in violation of 75 Pa.C.S.[A.] § 3334(b) because the vehicle did not signal for at least 300 feet of travel . . . while traveling above 35 miles per hour. According to Trooper Fay, Ptacek changed lanes into the right lane nearly immediately after passing the 26,000-pound box truck. She passed right in front of the box truck, overtaking it with at most two car-lengths or 20 feet between them, not the required 300 feet. Trooper Fay observed this as a potential crash hazard.

Having observed the traffic violation, Trooper Fay then positioned his vehicle behind Ptacek's vehicle and used his overhead emergency lights to signal Ptacek to stop. During the ensuing traffic stop, Trooper Fay spoke with Ptacek, arousing in him independent suspicion of drug trafficking. [Specifically, Ptacek provided Trooper Fay with an expired Ohio driver's license and could not identify either Lovelace or Brandon by name. The three occupants also offered inconsistent explanations concerning their activities that day.]

Trooper Fay obtained consent to search the vehicle, ultimately finding the contraband, including several thousand glassine bags filled with heroin and fentanyl, [weighing approximately 99.83 grams,] that would lead to the instant case.

Trial Court Opinion, 10/22/25, at 1-3 (unnecessary capitalization omitted and paragraph break inserted).[2]

The Commonwealth charged Lovelace with, *inter alia*, PWID and related narcotics offenses.[3] Lovelace filed an omnibus pre-trial motion to suppress, challenging the admissibility of evidence seized during the traffic stop and any statements made, on constitutional grounds. On October 19, 2023, the trial court convened a suppression hearing ("Suppression I hearing"), in which Trooper Fay was the only witness. At the conclusion of the Suppression I hearing, the trial court denied the motion.

On March 6, 2024, Lovelace filed a second omnibus pre-trial motion, challenging the legality of the traffic stop itself. He asserted that the officer lacked probable cause to stop the vehicle under section 3334(b) of the Motor Vehicle Code ("MVC"),[4] which governs turn signals. On June 12, 2024, the trial court conducted a suppression hearing ("Suppression II hearing"), at which the Commonwealth incorporated the notes of testimony from the October 19, 2023 suppression hearing and introduced the mobile video

---

[2] For ease of review, when quoting the trial court's opinion, we have changed the trial court's references to "Appellant" to "Lovelace," and have shortened the court's references of "Ms. Ptacek" to "Ptacek."

[3] The Commonwealth also charged Ptacek and Brandon with various offenses resulting from the traffic stop.

[4] *See* 75 Pa.C.S.A. §§ 101-9805.

recorder ("MVR") footage from Trooper Fay's patrol vehicle, which corroborated his testimony.

Lovelace argued that the stop was unlawful because it was based on Trooper Fay's misapplication of section 3334(b). Specifically, Lovelace contended that the statute's signaling-distance requirement applied only to turns, not lane changes, and therefore could not provide probable cause for the stop. In response, the Commonwealth maintained that the stop was lawful based on the driver's unsafe operation of the vehicle, emphasizing that the purpose of the statute was "to make the traffic safe." N.T., 6/12/24, at 31.

At the conclusion of the Suppression II hearing, the trial court denied the motion to suppress, observing that the car displayed signs of a MVC violation. The trial court stated that it had "watched the [MVR] twice" and "[t]hat video shows her cutting off that truck." *Id*. at 32. The trial court reasoned:

> [T]he trooper who was in the moment, who experienced the observations first-hand, found her driving to be unsafe; stopped her lawfully [and] it was an appropriate stop. [This court thinks] this trooper has done everything that he was required to do[.] . . .
>
> . . . He can make a stop and it doesn't have to be the articulated stop. [H]e didn't need to charge every summary violation that occurred.

*Id*.

On January 3, 2025, following a non-jury trial, the trial court found Lovelace guilty of PWID, possession of a controlled substance, possession of

- 4 -

drug paraphernalia, conspiracy to commit PWID, and conspiracy to commit possession of a controlled substance.[5]  On August 5, 2025, the trial court imposed a sentence of seven to fourteen years' incarceration.  Lovelace filed a timely notice of appeal.  Both he and the trial court complied with Pa.R.A.P. 1925.

Lovelace raises the following issue for our review:

> Whether the suppression court committed an error of law by denying suppression of the traffic stop and all evidence derived from the stop as fruit of the poisonous tree by finding the driver of the vehicle containing [Lovelace] allegedly cut off another vehicle on the roadway despite the fact that [Trooper Fay] explicitly testified that the sole reason for the traffic stop was a violation of 75 Pa.C.S.[A.] § 3334(b)?

Lovelace's Brief at 7.

Lovelace argues that the trial court erred as a matter of law in denying his motion to suppress because the traffic stop was not supported by probable cause.  When a defendant challenges the denial of a suppression motion, we "apply a *de novo* review over the suppression court's legal conclusions." ***Commonwealth v. Gurung***, 239 A.3d 187, 190 (Pa. Super. 2020) (citations omitted).  "Additionally, [i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony.  The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing."  ***Commonwealth v.***

---

[5] **See** 35 P.S. § 780-113(a)(16), (32); **see also** 18 Pa.C.S.A. § 903(a)(1)-(2), (b), (c).

*Shaw*, 246 A.3d 879, 883 (Pa. Super. 2021) (citations and some quotation marks omitted).

This Court has explained:

Where a traffic stop is "based on the observed violation of the [MVC] or [an] otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop." "[A] police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense."

*Gurung*, 239 A.3d at 191 (citations omitted).

"To establish probable cause, the 'officer must be able to articulate specific facts possessed by him at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in some violation of some provision of the [MVC].'" *Shaw*, 246 A.3d at 884. The validity of a traffic stop does not depend upon the officer's subjective articulation of the specific statutory violation, but rather upon whether the facts known to the officer at the time of the stop established a violation of the MVC. *See Commonwealth v. Neufer*, 400 A.2d 596, 600 (Pa. Super. 1979) (citation omitted) (stating that "[w]here the good faith of the arresting officer is not an issue, and where the crime for which a suspect is arrested and for which the officers have probable cause are closely related, courts typically use an objective rather than subjective measure of probable cause"). Thus, probable cause does not require certainty but rather "exists when criminality is one reasonable inference" arising from the totality of the circumstances. *Commonwealth v. Salter*, 121 A.3d 987, 994-95 (Pa. Super. 2015).

In relevant part, subsection 3334(a) of the MVC provides: "no person shall ***turn a vehicle or move from one traffic lane to another*** . . . unless and until the movement can be made with reasonable safety nor without giving an appropriate signal . . .." 75 Pa.C.S.A. § 3334(a) (emphasis added). This Court has interpreted the plain language of this subsection to "indicate[] that drivers may only move from one lane of traffic to another if the driver ***both*** can make the movement safely ***and*** has given an appropriate signal." ***Gurung***, 239 A.3d at 192 (emphasis in original and citation omitted). Hence, section 3334(a) requires a driver, before turning or changing lanes, to move their vehicle with reasonable safety ***and*** to signal appropriately. ***See*** 75 Pa.C.S.A. § 3334(a); ***see also Commonwealth v. Sanders***, 259 A.3d 524, 529 (Pa. Super. 2021).

Relatedly, subsection 3334(b) of the MVC provides:

> **(b) Signals on turning and starting. —** At speeds of less than 35 miles per hour, an appropriate signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. The signal shall be given during not less than the last 300 feet at speeds in excess of 35 miles per hour. The signal shall also be given prior to entry of the vehicle into the traffic stream from a parked position.

75 Pa.C.S.A. § 3334(b).

Lovelace argues that Trooper Fay testified at the Suppression I hearing that he initiated the traffic stop solely based on an alleged violation of section 3334(***b***), based on the driver's failure to signal for the requisite distance prior to changing lanes. Lovelace asserts however, that under ***Commonwealth v.***

*Slattery*, 139 A.3d 221 (Pa. Super. 2016), the signaling-distance requirement set forth in section 3334(b) applies only to turns and not to lane changes and therefore could not provide a valid basis for the stop. Lovelace further maintains that the driver did, in fact, signal before changing lanes and thus did not violate the MVC. Accordingly, he argues that Trooper Fay lacked probable cause to initiate the stop.

Additionally, Lovelace challenges the suppression court's reliance on an alternative justification for the stop — namely, that the vehicle "'cut off' a truck." Lovelace's Brief at 18. He asserts that this was not the basis articulated by the trooper and is unsupported by the record, including the MVR footage. Thus, Lovelace claims that the stop was unlawful and that the trial court should have suppressed all evidence obtained as a result thereof as fruit of the poisonous tree.

At the conclusion of the Suppression II hearing, the trial court denied Lovelace's motion to suppress. The trial court found that the MVR footage depicted the driver merging into the lane directly in front of a box truck at highway speed, leaving only a short distance between the vehicles. *See* N.T., 6/12/24, at 32. The trial court characterized this maneuver as "cutting off" the truck and concluded that the driving was unsafe. *See id*. The trial court credited Trooper Fay's testimony and determined that, based on his firsthand observations, the stop was lawful. The trial court further reasoned that the validity of the stop did not depend upon the specific statutory violation

articulated by the trooper at the time of the stop. Rather, the trial court explained that an officer may conduct a lawful traffic stop so long as the observed conduct provides a basis for a violation of the MVC, regardless of whether the officer cited the precise provision.

In its opinion, the trial court reasoned:

> Although the evidence presented at the Suppression I hearing could not support a stop based on subsection 3334(b), the same evidence provides reason for a stop based on subsection 3334(a)[.] . . .

> \* \* \* \*

> In the instant case, the court has already found that Trooper Fay's testimony is credible. The record displays his good faith in stopping Lovelace. Trooper Fay's subjective belief that the actions of Ptacek were unsafe to herself and others comports with the purpose of the statute in requiring motorists notify each other of their intentions to move through traffic, and to do so in a safe, predictable manner. The issue presented on appeal is whether the violation Trooper Fay subjectively believed to have occurred is closely related to the violation for which Trooper Fay objectively possessed probable cause.

> In the court's view, these provisions clearly are closely related to one another. Subsection 3334(a) provides the general rule for moving between traffic lanes and for turning into a traffic stream, while subsection 3334(b) provides a bright-line rule for signaling before turning. Although subsection 3334(b) deals only with turning and not with lane changes, these provisions are closely related in the behaviors they seek to regulate. Subsection 3334(b) delineates a particular rule, and that rule relates back to the general direction given in subsection 3334(a).

> Having established the close relation of these two provisions, the court next considers whether the evidence supports a finding that Trooper Fay had probable cause to believe that a violation of [section] 3334(a) had occurred. The duty placed upon lane-changing motorists by subsection 3334(a) is two-fold. The first duty is for the motorist to assure herself of the

safety of the anticipated maneuver. The second duty is to give the appropriate signal as provided in section 3334.

Understanding that under **Slattery**, subsection 3334(b) is inapplicable to the changing of lanes, and further understanding that the facts of this case do not indicate any violation of subsections 3334(c) or (d),[6] there appear to be no rules in section 3334 by which the court could evaluate the appropriateness of Ptacek's signal with regard to the second duty. Thus, any violation of section 3334 must have contravened the first duty, and the evidence points to this being the case.

The court's findings illustrate that the circumstances apparent to Trooper Fay at the time of stop constituted probable cause to believe Ptacek had in fact violated this provision by moving in front of the box truck before sufficient time had elapsed for her to be assured of the safety of the maneuver. Trooper Fay testified that Ptacek moved in front of the box truck with one or two car-lengths distance between them, and the court later found, based on Trooper Fay's testimony, his traffic enforcement experience, and the video evidence, that Ptacek's driving was unsafe, creating a risk of collision such that her driving was legally inappropriate.

These facts, especially when considering the degree of the potential harm that could occur had Ptacek's vehicle collided with the box truck, which Trooper Fay estimated to weigh 26,000 pounds, make clear to the court that the movement was not made with reasonable safety, or, at the least, was not made after sufficient time had elapsed for Ptacek to have been assured that the movement was safe. Accordingly, an objectively reasonable officer viewing these events would have probable cause to believe that Ptacek had violated subsection 3334(a). Therefore, Trooper Fay's decision to stop the vehicle passes constitutional muster.

Trial Court Opinion, 10/22/25, at 7-10 (citations and unnecessary capitalization omitted and paragraph breaks inserted).

_____

[6] **See** 75 Pa.C.S.A. § 3334(c)-(d) (governing the proper use and discontinuation of turn signals).

- 10 -

Our review discloses that the record and the law support the trial court's finding, that Trooper Fay possessed probable cause to lawfully stop the vehicle. **See Shaw**, 246 A.3d at 883; **see also Gurung**, 239 A.3d at 190. Although Trooper Fay testified that he initiated the stop based on an alleged violation of 75 Pa.C.S.A. § 3334(b), which we acknowledge applies to turning movements and not lane changes, the validity of the stop did not depend upon the officer's subjective articulation of the specific statutory provision. Rather, the proper inquiry was whether the facts known to the officer at the time of the stop established a violation of the MVC. **See Neufer**, 400 A.2d at 600.

The record supports the trial court's factual findings: (1) that Ptacek's reentering the right lane, in close proximity to a 26,000-pound box truck traveling at sixty-four miles per hour in a seventy-mile-per-hour zone, leaving only one to two car lengths between the vehicles created a safety hazard; and (2) that Trooper Fay had probable cause to believe the driver violated subsection 3334(a), which prohibits a driver from moving from one lane to another unless the driver can make the movement with reasonable safety. **See Gurung**, 239 A.3d at 192 (interpreting subsection 3334(a) as requiring a driver to make lane changes safely).

Moreover, probable cause existed as the facts would warrant a person of reasonable caution in believing that a violation had occurred, even if criminality is not the most likely inference. **See Salter**, 121 A.3d at 994–95. Even if Trooper Fay initially relied on an inapplicable subsection, the observed

conduct provided an independent, objective basis for the stop. Thus, the record supported the trial court's finding that Trooper Fay had probable cause to initiate the vehicle stop. Accordingly, we affirm the trial court's denial of Lovelace's motion to suppress.

As the traffic stop was lawful, Lovelace's claim that the evidence constituted fruit of the poisonous tree lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/29/2026

- 12 -