J-S05013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ORLANDO PORTFOLIO RODRIGUEZ | : | |
| | : | |
| Appellant | : | No. 1422 MDA 2019 |

Appeal from the Judgment of Sentence Entered June 20, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0000153-2019

BEFORE:  SHOGAN, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED APRIL 23, 2020**

Appellant, Orlando Portfolio Rodriguez, appeals from the judgment of

sentence entered June 20, 2019, in the Court of Common Pleas of Berks

County.  We affirm.

The trial court summarized the factual and procedural history of this

case as follows:

> On December 31, 2018, at approximately 1:28 in the
> morning, Trooper Dominick Marino ("Trooper Marino"), along with
> Trooper Robert Markowski, were on patrol and located at the
> intersection of Cabela Drive and State Route 61 north when
> Trooper Marino observed a vehicle in the left turn lane that was
> stopped over the stop line and into the crosswalk at a red light.
> After the light turned green and the vehicle turned, Trooper
> Marino initiated a traffic stop based on the failure of the vehicle to
> stop.
>
> Once the traffic stop was made, Trooper Marino approached
> the passenger side of the vehicle and detected a strong odor of
> marijuana along with a heavy odor of a masking agent.  Trooper
> Marino also observed that the driver, identified as Appellant, was

not wearing his seatbelt. When asked whether there were any narcotics, money or firearms in the vehicle, Appellant responded that there were no firearms, but indicated that a backpack in the vehicle contained marijuana. Trooper Marino performed a search of Appellant's vehicle and found two vacuum-sealed packages[1] containing 967 grams (2.13 pounds) of marijuana in an olive-green backpack and a blue backpack containing bundles of bulk U.S. currency. Appellant was detained and searched, upon which U.S. currency was found in the inside pocket of Appellant's jacket. The total amount of U.S. currency seized both from Appellant's person and from the blue backpack was $18,000.00. Appellant was also unable to produce a validly signed registration card or proof of financial responsibility.

> [1] The Stipulation of Facts presented Corporal Anthony C. Garipoli of the Pennsylvania State Police who, if called to testify as an expert in the field of narcotics, would testify that the amount of marijuana, and the manner in which the marijuana was packaged, is consistent with an intent of delivery.

\* \* \*

Appellant was arrested and charged at count one with Possession with Intent to Deliver a Controlled Substance[2], at count two with Possession of a Controlled Substance[3] and at count three with Possession of Drug Paraphernalia[4]. Appellant was also charged with summary offenses for Registration Card to be Signed and Exhibited on Demand[5], Required Financial Responsibility[6], Obedience to Traffic Signals[7] and Restraint Systems[8]. On February 4, 2019, Appellant, through counsel, filed an Omnibus Pretrial Motion seeking suppression of physical evidence through a challenge to the legality of the initial traffic stop. A hearing was held April 18, 2019[,] on Appellant's pretrial motion, which was subsequently denied by this court on May 20, 2019.

> [2] 35 P.S. § 780-113(a)(30)
> [3] 35 P.S. § 780-113(a)(16)
> [4] 35 P.S. § 780-113(a)(32)
> [5] 75 Pa.C.S.A. § 1311(a)
> [6] 75 Pa.C.S.A. § 1786(f)
> [7] 75 Pa.C.S.A. § 3111(a)
> [8] 75 Pa.C.S.A. § 4581(a)(2)(ii)

A bench trial was held on June 19, 2019, at which the parties agreed to a stipulated bench trial and submitted a stipulation of facts and the Commonwealth entered its evidence into the record. The next day, June 20, 2019, after reviewing the record, the evidence therein and the  stipulation of facts, we found Appellant guilty as to counts one, two and three, and as to the summary offense of Obedience to Traffic Signals.  Thereafter, this court sentenced Appellant to an aggregate sentence of a minimum of one year and a maximum of five years of incarceration in a State Correctional Facility.  Appellant was RRRI eligible and his minimum was accordingly reduced to nine months.

After sentencing, and in accordance with Appellant's expressed wishes, we granted trial counsel's motion to withdraw as counsel.  On July 1, 2019, Appellant, through new counsel, filed Post Sentence Motions.[9]  An Amended Motion for Post Sentence Relief was filed on July 22, 2019, which we subsequently denied by order dated July 29, 2019.

[9] Appellant also filed *pro se* Post Sentence Motions that this court denied.

On August 26, 2019, Appellant filed a timely Notice of Appeal.  We issued an order on August 28, 2019 directing Appellant to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed his Concise Statement on September 17, 2019.

Trial Court Opinion, 10/18/19, at 1-3.

On appeal, Appellant presents the following issues in his statement of

questions involved:

Whether the trial court erred in denying Appellant's Motion to Suppress regarding the traffic stop of Appellant, where all evidence obtained was found as a result of the traffic stop.

Whether the sentencing court gave sufficient weight to mitigating factors in imposing a sentence on Appellant.

Whether the Commonwealth presented sufficient evidence during a stipulated bench trial to be establish the elements of Possession with Intent to Deliver.

Appellant's Brief at 9. Despite outlining the above issues, however, Appellant explains in two footnotes that he is not pursuing issues two and three on appeal. Specifically, he states: "After further review of the record, there is no meritorious argument that can be made regarding the discretionary aspects of sentencing, and so Appellant concedes on this issue." He further states: "Even though sufficiency of the evidence was raised in the Concise Statement, after further reviewing the record, Appellant will concede sufficiency of the evidence." Appellant's Brief at 9, n.1, n.2. Thus, we address Appellant's sole issue concerning the denial of his suppression motion.

Appellant argues that the trial court erred in denying Appellant's motion to suppress where the traffic stop was improper and all evidence against Appellant was found because of the stop. Appellant's Brief at 17. Appellant maintains that he was pulled over because he was "illegally stopped over the stop line." *Id.* at 19. Appellant asserts that because this was a traffic stop, probable cause to initiate the traffic stop was required, as the stop would not likely yield further evidence of the offense. *Id.* Appellant argues that the evidence presented at trial was insufficient to establish that Trooper Marino had probable cause to believe Appellant violated the motor vehicle code and therefore did not lawfully stop Appellant. *Id.* Appellant maintains that

> Trooper Marino did not see Appellant drive over the indicated line or any conduct prior to being over the stop line. Further, because the inductive loop sensor or automatic timer controlling the traffic signal may not have been working properly when Appellant approached the light, the Motor Vehicle Code permits him to stop

at the line and pull forward until he can see oncoming traffic, as if he were at a stop sign.[1]

*Id.* 19-20. Accordingly, Appellant argues that because Appellant was unlawfully stopped, all evidence discovered in the vehicle should have been suppressed as fruit of the poisonous tree. *Id.* at 20.

With respect to an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their

---

[1] Appellant asserts that

> Under 75 Pa.C.S. § 3112(c), if an inductive loop sensor or other automatic timer controlling a traffic signal is inoperable, then it is permissible to treat the faulty signal as a stop sign as provided in 75 Pa.C.S.A. § 3323. Under 75 Pa.C.S.A. § 3323(b), a driver must stop at the indicated stop line, but is permitted to 'pull forward from the stopped position to a point where the driver has a clear view of approaching traffic'.

Appellant's Brief at 18.

testimony." ***Commonwealth v. Gallagher***, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. ***In re L.J.***, 79 A.3d 1073, 1087 (Pa. 2013).

In determining what level of legal justification is necessary to support a vehicle stop, this Court has explained:

> [W]hen considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop. Illustrative of these two standards are stops for speeding and DUI. If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway. On the other hand, if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a Vehicle Code violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance.

***Commonwealth v. Salter***, 121 A.3d 987, 993 (Pa. Super. 2015).

The Motor Vehicle Code provides the following, in relevant part, regarding traffic-control signals:

> **§ 3111. Obedience to traffic-control devices**
>
> **(a) General rule.--**Unless otherwise directed by a uniformed police officer or any appropriately attired person authorized to direct, control or regulate traffic, the driver of any vehicle shall obey the instructions of any applicable official traffic-control

device placed or held in accordance with the provisions of this title, subject to the privileges granted the driver of an emergency vehicle in this title.

75 Pa.C.S. § 3111(a).

**§ 3112. Traffic-control signals**

**(a) General rule.--**Whenever traffic is controlled by traffic-control signals exhibiting different colored lights, or colored lighted arrows, successively one at a time or in combination, only the colors green, red and yellow shall be used, except for special pedestrian signals carrying a word legend, and the lights shall indicate and apply to drivers of vehicles and pedestrians as follows:

* * *

**(3) Steady red indication.—**

(i) Vehicular traffic facing a steady red signal alone shall stop at a clearly marked stop line, or if none, before entering the crosswalk on the near side of the intersection, or if none, then before entering the intersection and shall remain standing until an indication to proceed is shown except as provided in subparagraph (ii).

(ii) Unless signing is in place prohibiting a turn, vehicular traffic facing a steady red signal may enter the intersection to turn right, or to turn left from a one-way highway onto a one-way highway after stopping as required by subparagraph (i). Such vehicular traffic shall yield the right-of-way to pedestrians lawfully within an adjacent crosswalk and to other traffic lawfully using the intersection.

75 Pa.C.S. § 3112(3)(i) and (ii). Moreover, the statute carves out an

exception for inoperable or malfunctioning signals as follows:

**(c) Inoperable or malfunctioning signal.**--If a traffic-control signal is out of operation or is not functioning properly, including, but not limited to, a signal that uses inductive loop sensors or other automated technology to detect the presence of vehicles that fails to detect a vehicle, vehicular traffic facing a:

> (1) Green or yellow signal may proceed with caution as indicated in subsection (a)(1) and (2).
>
> (2) Red or completely unlighted signal shall stop in the same manner as at a stop sign, and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign as provided in section 3323 (relating to stop signs and yield signs).[2]

75 Pa.C.S. § 3112(c).

At the suppression hearing, Trooper Dominick Marino testified that he

stopped Appellant on the night at issue because Appellant's vehicle was

_____

[2] Section 3323(b) of the Motor Vehicle Code states the following for duties at stop sign:

> every driver of a vehicle approaching a stop sign shall stop at a clearly marked stop line or, if no stop line is present, before entering a crosswalk on the near side of the intersection or, if no crosswalk is present, then at the point nearest the intersecting roadway where the driver has a clear view of approaching traffic on the intersecting roadway before entering. If, after stopping at a crosswalk or clearly marked stop line, a driver does not have a clear view of approaching traffic, the driver shall after yielding the right-of-way to any pedestrian in the crosswalk slowly pull forward from the stopped position to a point where the driver has a clear view of approaching traffic. The driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute a hazard during the time when the driver is moving across or within the intersection or junction of roadways and enter the intersection when it is safe to do so.

75 Pa.C.S. § 3323(b).

"illegally stopped." N.T. (Suppression), 4/18/19, at 4. In explaining how it was illegally stopped, Trooper Marino stated that the vehicle was at the intersection in the turning lane, the traffic control device was red, and Appellant's vehicle was over the white "stop bar" and "into the crosswalk." *Id.* at 4-5. Trooper Marino also testified that the light subsequently turned green, and Appellant proceeded through the intersection, prior to the Trooper stopping Appellant's vehicle. *Id.* at 7. Trooper Marino testified that Appellant was charged with violation of Section 3111 for failing to stop behind the white bar. *Id.*

Furthermore, the trial court summarized the video recording played at the hearing as follows:

> The [c]ourt: Before I ask the trooper to step down, I want to–since I watched a video, the record doesn't say a thing about what's going on here. So I want to state for the record what my observations were of the video.
>
> The video, it seemed to be, clearly showed that [Appellant's] vehicle straddled that white stop bar, that his front wheels were in front of it and his back wheels were behind it, and while he was stopped there – and he stopped, he did not go through any red light. While he was stopped there, shortly before the light changed, a large tractor trailer made a left-hand turn out of the area that is the industrial and commercial complex on the east side of Route 61 and made a left-hand turn then, which would have passed in front of [Appellant's] vehicle.
>
> That is what the [c]ourt observed. Is there any dispute about–that that's what this thing shows?
>
> [Appellant's Counsel]: No, Your Honor.
>
> [Commonwealth Attorney]: No, Your Honor.

The [c]ourt: Very well.

N.T., Suppression, 4/18/19, at 10-11.

In addressing this issue, the trial court provided the following analysis:

Section 3112(3)(i) of the Vehicle Code provides that "[v]ehicular traffic facing a steady red signal alone shall stop at a clearly marked stop line, or if none, before entering the crosswalk on the near side of the intersection." Furthermore, the statute carves out an exception that allowing that "[i]f a traffic-control signal is out of operation or is not functioning properly, including, but not limited to, a signal that uses inductive loop sensors or other automated technology to detect the presence of vehicles that fails to detect a vehicle, vehicular traffic facing a . . . [r]ed or completely unlighted signal shall stop in the same manner as at a stop sign, and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign as provided in section 3323 (relating to stop signs and yield signs)." 75 Pa.C.S.A. § 3112(c).

Appellant attempts to find safe-harbor in the inoperable or malfunctioning signal exception under Section 3112. However, Appellant can provide no evidence from the record indicating that the signal at the intersection was inoperable or malfunctioning. While Appellant's trial counsel cross-examined Trooper Marino at the suppression hearing as to the Trooper's knowledge of the inductive loop sensor at the particular intersection of 61 north and Cabela Drive, Trooper Marino was unable to speak to the issue.

The evidence presented by the Commonwealth at the suppression hearing, both visually and through testimony, indicated that Trooper Marino observed Appellant's vehicle straddling the white stop bar line at an intersection with a traffic control device. Upon the traffic signal turning from red to green, Appellant made the left turn from the appropriate lane. The traffic signal appeared to be operating properly. Likewise, there was no indication that any inductive loop sensor was inoperable either.

Despite Appellant's arguments otherwise, Trooper Marino observed Appellant's vehicle straddling the line and therefore in violation of Section 3112 of the Vehicle Code. Appellant's attempts to justify his violation of the code by alleging an inoperable inductive loop sensor are not supported by the

- 10 -

evidence of record. As such, we find that Appellant's alleged error lacks merit and that this court's denial of his suppression motion is supported by the record.

Trial Court Opinion, 10/18/19, at 4-5 (internal footnote omitted).

We agree that the trial court's denial of Appellant's suppression motion was supported by the record.[3] The evidence of record supports the conclusion that Trooper Marion had probable cause to stop Appellant for violation of Section 3111(a) of the Motor Vehicle Code. As outlined above, Appellant's vehicle was over the white stop bar and into the crosswalk at an intersection with a red signal. As the trial court described from the video, the car had significantly exceeded the stop bar, having its front wheels in front of it and its back wheels behind it. Moreover, there is no evidence of record that the signal was inoperable or malfunctioning as to invoke the exception provided for in 75 Pa.C.S. § 3112(c). In fact, the signal turned green after Trooper Marino observed Appellant's vehicle illegally parked and before Trooper Marino

_____

[3] Although we agree with the trial court's conclusion that Appellant violated the Motor Vehicle Code and was lawfully stopped, we note that the trial court applied the incorrect standard necessary to the stop. Herein, because it was not necessary to stop the vehicle to establish that a violation of the Vehicle Code had occurred, the officer was required to possess probable cause to stop the vehicle. **Salter**, 121 A.3d at 993. The trial court incorrectly stated that "police have the authority to stop a vehicle whenever he or she 'has reasonable suspicion that a violation of the Vehicle Code is occurring or has occurred.'" Trial Court Opinion, 10/18/19, at 4. This error is not prejudicial, and the ruling is otherwise consistent with law. **Commonwealth v. Walsh**, 125 A.3d 1248, 1253 (Pa. Super. 2015). ("We can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm.").

- 11 -

was able to pull Appellant over for the motor vehicle code violation. ***See Salter***, 121 A.3d at 994 ("Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference."). Thus, because Trooper Marino had probable cause to stop Appellant for the Motor Vehicle Code violation, the stop was lawful. Accordingly, the contraband subsequently discovered in Appellant's vehicle was lawfully obtained, and not "fruit of the poisonous tree" as asserted by Appellant. As this Court has explained: "The 'fruit of the poisonous tree' doctrine excludes evidence obtained from, or acquired as a consequence of, lawless official acts. A fruit of the poisonous tree argument requires an antecedent illegality." ***Commonwealth v. Johnson***, 68 A.3d 930, 946 (Pa. Super. 2013) (internal citations and quotation marks omitted). Here, no such antecedent illegality occurred. Thus, the trial court did not err in denying Appellant's suppression motion. Appellant is entitled to no relief on this claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/23/2020