J-A09019-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER JOSEPH VASQUEZ | : | |
| | : | |
| Appellant | : | No. 835 MDA 2022 |

Appeal from the Judgment of Sentence Entered May 2, 2022
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0004712-2020

BEFORE: PANELLA, P.J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY OLSON, J.:                     **FILED AUGUST 31, 2023**

Appellant, Christopher Joseph Vasquez, appeals from the judgment of sentence entered on May 2, 2022, following his bench trial convictions for three counts of driving under the influence (DUI) of a controlled substance.[1] We affirm.

The trial court set forth the facts and procedural history of this case as follows:

> In the early morning hours of August 6, 2020, Officer Nicholas Grecco of the Northern Lancaster Regional Police Department was traveling north on Route 72, and observed a vehicle[] approaching in the southbound lane with its high beam headlights activated. The operator then dimmed the high beam headlights and Officer Grecco saw that one of the headlights on the approaching vehicle was not functioning. Upon looking in his rear-view mirror after the vehicle passed, Officer Grecco saw that the vehicle did not

---

[1] 75 Pa.C.S.A. §§ 3802(d)(2) (DUI - impaired ability), 3802(d)(1)(i) (DUI controlled substance – schedule 1), and 3802(d)(iii) (DUI controlled substance – metabolite), respectively.

have any working registration lights. As a result of the nonoperative lights. Officer Grecco made a U-turn to follow the vehicle, and after approximately two miles, initiated a traffic stop; he also noted the operator failed to use a turn signal when pulling over.

After making contact with the operator, Officer Grecco noticed the odor of marijuana emanating from the vehicle. As requested, the operator handed over his Pennsylvania driver's license identifying him as [Appellant] when Officer Grecco saw that Appellant's eyes were glassy. Officer Grecco then returned to his vehicle and ran Appellant's license, confirming it was valid and that Appellant had no outstanding warrants. Upon his return, Officer Grecco asked Appellant to exit the vehicle, and if Appellant would consent to a search of the vehicle. Appellant advised that there was nothing illegal in the vehicle and consented to a search of the vehicle. During his search, Officer Grecco found a marijuana roach in a small compartment to the left of the steering wheel. When the search was complete, Officer Grecco informed Appellant what he found, and wanted to make sure [Appellant] was not impaired [if Officer Grecco were not] going to take him into [] custody for [DUI. Officer Grecco] asked [Appellant] if he would submit to field sobriety testing; Appellant consented.

Officer Grecco then guided Appellant through the horizonal gaze nystagmus ("HGN"), walk and turn, one leg stand, and lack of convergence sobriety tests, and Appellant failed the HGN, walk and turn, and lack of convergence sobriety tests. At that time, based on the [failure to use] a turn signal [during the traffic stop], the odor of marijuana emanating from the vehicle, the marijuana roach, and the failure of three out of four field sobriety tests, Officer Greco placed Appellant under arrest for suspected DUI.

On June 8, 2021, Appellant, through counsel, filed a pre-trial motion to suppress evidence based on a lack of probable cause of impairment. On September 23, 2021, a suppression hearing was held [] wherein Appellant argued that Officer Grecco lacked probable cause to arrest Appellant for DUI because there was insufficient evidence of intoxication and impaired driving behavior. Specifically, Appellant argued that the results of the HGN field sobriety test were insufficient in determining probable cause for arrest for DUI. At the suppression hearing, the Commonwealth argued that current case law holds that the results of the HGN test can be used for determining probable cause for arrest. Following argument, [the trial court] denied Appellant's motion to suppress.

> On February 4, 2022, following a non-jury trial, [ ] Appellant was found guilty of [the aforementioned crimes]. Appellant was found not guilty of disorderly conduct. On May 2, 2022, Appellant was sentenced to three to [23] months' incarceration.

Trial Court Opinion, 9/20/2022, at 1-3 (quotations, footnotes, record citations, and some parentheticals omitted). This timely appeal resulted.[2]

On appeal, Appellant presents a sole issue for our review:

> Did the court below err by finding that probable cause existed to arrest [Appellant] for a violation of [75 Pa.C.S.A. §] 3802 of the [M]otor [V]ehicle [C]ode and declining to suppress the results of chemical testing on his blood and the observations of a drug recognition expert?

Appellant's Brief at 9 (numbering omitted).

Appellant generally argues that Officer Grecco lacked probable cause to arrest Appellant for DUI of a controlled substance. *Id.* at 17-30. Appellant asserts that the totality of the circumstances "leading up to the field sobriety tests" were not sufficient to justify a belief that he was incapable of safe driving. *Id.* at 19. Appellant contends that "[t]he facts established by the Commonwealth during this portion of the stop included: a malfunctioning headlight, a malfunctioning license plate light, [the failure to use a turn signal] when [Appellant] pulled over after the officer activate[d] his lights behind him, the odor of marijuana 'emanating' from the vehicle, and the presence of a marijuana roach found in the vehicle during a consen[sual] search[.]" *Id.* at

---

[2] Appellant filed a notice of appeal on May 31, 2022. On June 3, 2022, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on June 24, 2022. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 20, 2022.

19 (record citations omitted). More specifically, citing our Supreme Court's decisions in **Commonwealth v. Barr**, 266 A.3d 25 (Pa. 2021) and **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020), Appellant opines that "[i]n light of widespread prescription and use of medical marijuana, the smell thereof – without more – is insufficient to establish probable cause for a warrantless search of a motor vehicle." **Id.** at 23. Further, Appellant contends that "field sobriety tests did not establish probable cause where none existed before." **Id.** at 25. Appellant acknowledges that "the rules of evidence do not apply in an inquiry into probable cause" and concedes that "even though it may be inadmissible to prove someone guilty, a suppression court may consider an officer's testimony regarding [the] HGN [sobriety test] when deciding whether there was probable cause to arrest." **Id.** at 27. Appellant asserts, however, that Officer Grecco's testimony about the field sobriety tests did not support a finding of probable cause to arrest because he conducted the tests initially to detect alcohol impairment rather than marijuana, Appellant advised the officer that he had a medical condition or "a leaky retina," Appellant completed the one-leg-stand test without incident, and that asking for clarification on the walk-and-turn test did not equate to impairment. **Id.** at 25-30. Appellant asserts that Officer Grecco "effectively took [Appellant] into custody before administering field sobriety tests by informing him he would be arrested if he did not perform them." **Id.** at 18.

Our Supreme Court previously determined the standard of review governing an order denying a motion to suppress:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where [ ] the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [trial] court [] below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotations omitted).

"[T]his Court [has] held that a police officer must have probable cause to support a [] stop where the officer's investigation subsequent to the stop serves no investigatory purpose relevant to the suspected Vehicle Code violation." *Commonwealth v. Venable*, 200 A.3d 490, 498 (Pa. Super. 2018) (internal citation, quotations and original brackets omitted). Furthermore, we have recently observed:

Any technical traffic violation (supported by probable cause) legitimizes a stop, even if it is merely a pretext for some other investigation. *See Whren v. United States*, 517 U.S. 806 (1996). "During a traffic stop, the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Commonwealth v. Harris*, 176 A.3d 1009, 1020 (Pa. Super. 2017) (citation and internal quotation marks omitted). "[I]f there is a legitimate stop for a traffic violation ... additional suspicion may arise before the initial stop's purpose has been

- 5 -

fulfilled, then, detention may be permissible to investigate the new suspicions." *Id.* (citation omitted). This further detention must be supported by reasonable suspicion[.]

*Commonwealth v. Burger*, 2023 WL 4348334, at *5 (Pa. Super. 2023) (unpublished memorandum).[3]

Here, there is no dispute that the officer had probable cause to conduct a traffic stop for suspected violations of the Motor Vehicle Code. *See* Appellant's Brief at 20 (Appellant "concedes that the lighting violations provided Officer Grecco with a valid basis to stop his vehicle."). Thus, we must examine whether the investigating officer had reasonable suspicion to further detain Appellant. *See Commonwealth v. Dabney*, 274 A.3d 1283, 1293 (Pa. Super. 2022) (An officer must have reasonable suspicion to detain a DUI suspect to conduct field sobriety tests).

This Court has recognized that field sobriety tests are "generally accepted methods for ascertaining alcohol or drug impairment at the time of a traffic stop." *Commonwealth v. Salter*, 121 A.3d 987, 996 (Pa. Super. 2015). More specifically, field sobriety tests

are grounded in theories which link an individual's lack of coordination and loss of concentration, with intoxication. This inter-relationship is also recognized in what is generally accepted as the common indicia of intoxication, within the understanding and experience of ordinary people. In fact, non-expert testimony is admissible to prove intoxication where such testimony is based upon the witness' observation of the defendant's acts and speech

---

[3] *See* Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

- 6 -

and where the witness can opine as to whether the defendant was [intoxicated].

***Id.*** (citation omitted).

However, this Court has also recognized that subsequently "failing these tests is not a requirement for a determination of probable cause." ***Salter***, 121 A.3d at 997, *citing* ***Commonwealth v. Slonaker***, 795 A.2d 397, 402 (Pa. Super. 2002) ("[T]he law is well-settled that reasonable grounds to arrest does not require the failure of field sobriety tests."). "Nonetheless, performing poorly may be sufficient for a finding of impairment." ***Id.***, *citing* ***Commonwealth v. Downing***, 739 A.2d 169, 173 (Pa. Super. 1999) ("[Downing] demonstrated his impairment by doing poorly on three field sobriety tests."). "Even if [an] inability to perform [sobriety tests] could have other explanations, this circumstance, alone, does not make the officer's decision to arrest on suspicion of DUI unreasonable." ***Id.*** at 997-998. "The applicable standard for determining probable cause calls for a totality of circumstances analysis, not a mechanical consideration of specific factors" and, furthermore, "[i]t is the facts and circumstances **within the personal knowledge of the police officer** that frames the determination of the existence of probable cause." ***Id.*** at 995 (citations omitted; emphasis in original). "[I]t is well[-]established that probable cause to arrest can be supported by the existence of evidence that is inadmissible at trial" and an officer "trained in the administration of the HGN test, [is] permitted to rely on his observations gained from that procedure to support his conclusion that [an

offender] was driving under the influence of a controlled substance." *Commonwealth v. Weaver*, 76 A.3d 562, 567 (Pa. Super. 2013) (citation omitted). Finally, our Supreme Court has held "that the odor of marijuana alone does not amount to probable cause to conduct a warrantless search of a vehicle but, rather, may be considered as a factor in examining the totality of the circumstances." *Barr*, 266 A.3d at 44.

In this case, the trial court determined:

> Here, before Officer Grecco requested consent to search Appellant's vehicle, he observed Appellant's failure to use a turn signal to turn after the traffic stop was initiated. [Officer Grecco testified that such action is] "an indicator of – could be an indicator of DUI according to the National Highway Traffic Safety Administration." Further, after approaching Appellant's vehicle[,] Officer Grecco smelled an odor of marijuana emanating from the vehicle, and saw that Appellant's eyes were glassy, both indicators of intoxication. After informing Appellant of the odor of marijuana, Officer Grecco asked if there was anything illegal in the vehicle to which Appellant replied there was not. At this point in the interaction, Officer Grecco abandoned the investigation concerning the traffic code violations and began an independent investigation into possible DUI. As required, Officer Grecco articulated specific observations, which in light of his experience and training, reasonably inferred that Appellant may be intoxicated and impaired.

Trial Court Opinion, 9/20/2022, at 8 (record citations omitted). The trial court further rejected Appellant's implication "that Officer Grecco relied solely on the smell of marijuana [for] probable cause to arrest" Appellant. *Id.* Instead, Appellant consented to a search of the vehicle which revealed a marijuana roach that "was relatively fresh." *Id.* at 9 (record citation omitted). This discovery, in turn, led to the initiation of field sobriety tests. *Id.* Appellant

performed poorly on three of the four field sobriety tests conducted. *Id.* at 11 ("Here, while Appellant completed the field sobriety tests, Officer Grecco observed that Appellant showed four of six possible indicators of impairment when performing the HGN test, two out of eight indicators of impairment performing the walk and turn test[,] and failed two of three passes used for the lack of convergence test."). Thus, the trial court ultimately determined that "[w]ith consent to search, and consent to participate in field sobriety testing, Officer Grecco found additional indicators of impairment when he found the marijuana roach and when Appellant failed three of four field sobriety tests" and "[u]sing the facts and circumstances within his personal knowledge, and his training as a law enforcement officer, Officer Grecco correctly determined that probable cause of impairment existed to support Appellant's arrest for DUI." *Id.*

We agree with the trial court's assessment. Initially, as stated earlier, we note that Appellant does not challenge the legality of the traffic stop. *See* Appellant's Brief at 20 (Appellant "concedes that the lighting violations provided Officer Grecco with a valid basis to stop his vehicle."). Once Officer Grecco initiated a valid traffic stop, he thereafter acquired the requisite reasonable suspicion to further detain Appellant, including Appellant's failure to use a turn signal when pulling over during the valid traffic stop, Appellant's glassy eyes as indica of intoxication, and the odor of marijuana emanating from the vehicle wherein Appellant was the only traveler. Also, there is no dispute that Appellant subsequently agreed to a voluntary search of his

vehicle. *Id.* at 24 (Appellant "consented to a search of his vehicle."). That search uncovered a partially burnt marijuana joint inside the vehicle that the officer described, based upon his experience and training, as "relatively fresh." Taken together, the facts and circumstances known to Officer Grecco, in light of his training and experience, gave him the requisite reasonable suspicion to believe that Appellant recently ingested marijuana, which justified further field sobriety tests. *Dabney*, **supra**. Thereafter, Appellant failed three of the four field sobriety tests, which this Court has found sufficient for a finding of impairment, even if Appellant offered other excuses for his poor performance. *Downing*, **supra**. As such, in summation, we conclude that Officer Grecco had reasonable suspicion to detain Appellant for further investigation after initiating a valid traffic stop and that Appellant's poor performance on subsequent field sobriety tests gave Officer Grecco probable cause to arrest Appellant for DUI. Accordingly, the trial court did not err by denying suppression. Hence, Appellant's sole appellate issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/31/2023

- 10 -