2025 PA Super 182

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROY WILLIAM MARBERGER, IV | : | |
| | : | |
| Appellant | : | No. 2649 EDA 2024 |

Appeal from the Judgment of Sentence Entered November 29, 2023
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0000100-2023

BEFORE: KUNSELMAN, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY FORD ELLIOTT, P.J.E.: **FILED AUGUST 25, 2025**

Roy William Marberger, IV, appeals *nunc pro tunc* from the judgment of sentence imposed after the trial court found him guilty of driving both under the influence ("DUI") of a controlled substance and improper headlight usage.[1] Marberger was sentenced to seventy-two hours to six months of incarceration on the DUI offense and received no further penalty at the latter crime. Marberger challenges the sufficiency of the evidence underpinning his DUI conviction, contending, *inter alia*, that the Commonwealth proffered no evidence to demonstrate, with any particularity, the controlled substance Marberger was alleged to have consumed. He additionally challenges the reasonable suspicion and/or probable cause that underpinned the police

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 75 Pa.C.S. §§ 3802(d)(2), 4302(a)(1), respectively.

officers' decisions to subject him to field sobriety testing and thereafter arrest him. We affirm.

As thoroughly recounted by the trial court:

[o]n July 22, 2022, Pennsylvania State Trooper Ludwig Ogando [] and Pennsylvania State Trooper Thomas Kirk [] were on patrol in Milford Township, Bucks County. During the patrol, Trooper Kirk was acting as Trooper Ogando's field training officer. At approximately 3:30 a[.]m[.], Trooper Ogando observed a vehicle driving without its headli[ghts] on and weaving on the roadway in the oncoming lane of traffic near the intersection of John Fries Highway and Commerce Drive, Milford Township, Bucks County. Trooper Ogando signaled the driver of the vehicle to pull over and stop, which he initially failed to do. The driver subsequently stopped in the parking lot of a Wawa convenience store.

Trooper Ogando approached the vehicle and observed [Marberger's] jittery demeanor, and the Trooper noticed that [Marberger's] eyes were bloodshot, glassy, and had a slow pupillary response to light. Trooper Ogando held his flashlight slightly above [Marberger's] eye level and observed that [Marberger's] pupils did not react quickly, unlike in other traffic stops he had conducted where individuals' eyes reacted to the light by their pupils quickly constricting. Trooper Ogando noted [Marberger] was "jittery" and would not sit still during their encounter. When asked his destination, [Marberger] told Trooper Ogando that he was coming from Norristown and was traveling home. Although [Marberger] lived in Chester County and claimed to be going home, he was, in fact, traveling in the opposite direction of his home. This route, and [Marberger's] explanation, was illogical to Trooper Ogando.

Trooper Kirk exited the patrol vehicle and approached [Marberger's] vehicle on the passenger side. [Marberger] appeared to be restless, fidgeting[,] and moving back and forth. [Marberger] was very talkative, providing Trooper Ogando with unnecessary information[,] and often repeating himself multiple times. When asked straightforward questions, [Marberger] rambled and discussed unrelated topics instead of providing a clear and simple answer.

Trooper Ogando and Trooper Kirk obtained [Marberger's] driver's license and insurance information, returned to the patrol vehicle, and discussed their observations of [Marberger]. Based on the totality of circumstances, Trooper Ogando and Trooper Kirk determined that they had reasonable suspicion that criminal activity was afoot, thereby warranting asking [Marberger] to step out of his vehicle for further investigation. When they approached the vehicle a second time and asked [Marberger] if he minded stepping out of his vehicle, [Marberger] responded in an uncooperative manner, stating that he did mind stepping out of the vehicle and that he would not do so. Trooper Ogando and Trooper Kirk patiently and repeatedly requested [Marberger] to exit his vehicle, but [Marberger] adamantly refused to do so for approximately six to seven minutes prior to eventually complying.

At that point, based on their observations of [Marberger's] speech, eyes, physical movements, and overall demeanor, Trooper Ogando and Trooper Kirk reasonably suspected that [Marberger] was under the influence of a controlled substance. As a result, they administered field sobriety tests. Trooper Ogando administered a series of Standard Field Sobriety Tests ("SFSTs") including the horizontal gaze nystagmus (hereinafter "HGN["]"), the walk and turn, and the one-leg stand. Each test, the trooper noted, provides validated indicators of impairment due [to] a blood[-]alcohol concentration (hereinafter "BAC") of .08 or higher[] or of a controlled substance.

Trooper Ogando explained and administered the HGN test on [Marberger]. The HGN assesses equal tracking of the eyes and equal pupil size. Signs of impairment in a HGN test are lack of smooth pursuit, sustained nystagmus at maximum deviation, and onset of nystagmus present at forty-five [] degrees. Trooper Ogando observed [Marberger] to have a lack of smooth pursuit of both eyes.

Trooper Ogando then explained and administered the walk[-]and[-]turn [test] to [Marberger]. The walk[-]and[-]turn test consists of a series of nine steps going in one direction, then turning around and taking nine steps in the opposite direction. During the test, [Marberger] stepped off of the line, missed putting his heel to his toe, used his arms for balance, and spun in the opposite direction of the direction to which he was instructed to turn. Trooper Ogando then explained and administered the one-leg stand test. Signs of impairment in a one-leg stand test are an

- 3 -

individual placing their foot down, hopping, swaying, or using their arms for balance. During the test, [Marberger] placed his foot down, used his arms for balance, and swayed while performing the test.

[] Marberger frequently interrupted Trooper Ogando while he was explaining the tests, as [Marberger] struggled to remain quiet. [Marberger] was unable to follow simple instructions, and he did not understand questions asked or the SFST demonstrations despite them being explained to him multiple times. Trooper Kirk found these behaviors to be indicators of impairment. Trooper Ogando and Trooper Kirk believed [Marberger's] impairment was likely from a controlled substance, not alcohol. Accordingly, Trooper Kirk proceeded with an Advanced Roadside Impairment Driving Enforcement (hereinafter "ARIDE") [evaluation] which aids officers in detecting impairment from a controlled substance.

Trooper Kirk first administered the lack[-]of[-]convergence test, where a subject is instructed to follow a pen held in front of his face and moved toward the subject. From this movement, the subject's eyes will naturally want to cross; if they do not, it is viewed as an indicator of intoxication. During the test, [Marberger's] left eye did not converge. Trooper Kirk also noted [Marberger's] eyes were glassy and bloodshot, and he had dilated pupils with a slow response to light. Next, Trooper Kirk administered the modified Romberg balance test which requires the subject to maintain balance, follow directions, and estimate the passage of a certain amount of time. Signs of impairment from this test are eye tremors, body tremors, swaying, or improper estimation of time. During the test, [Marberger] swayed front to back and had eyelid tremors.

When Trooper Kirk inquired, [Marberger's] story as to where he was coming from and going to was "all over the place" from what he had previously told Trooper Ogando. He told Trooper Kirk that he was coming from Norristown and was going to AAA to get gas. When asked, [Marberger] told Trooper Kirk that he had not used any controlled substance. At some point during the police encounter, [Marberger] informed Trooper Ogando and Trooper Kirk that he had "nerve damage" due to multiple concussions.

Based on the totality of the circumstances, the observations of the vehicle in motion, the personal contact, and the testing, there were more validated clues than would normally be present with

someone under the influence of alcohol or a controlled substance. Based on their training and experience, Trooper Ogando and Trooper Kirk concluded that [Marberger] was under the influence of a controlled substance to a degree that rendered him incapable of driving. Trooper Ogando placed [Marberger] under arrest for DUI and read Pennsylvania Department of Transportation form DL-26B to him. Trooper Ogando asked [Marberger] if he would submit to a chemical blood test and in response, [Marberger] asked if he had the right to remain silent. [Marberger] then repeatedly ignored the issue of whether or not he would consent to a blood draw, and Trooper Ogando found [Marberger's] responses, and lack thereof, to constitute a refusal to the chemical blood test.

There was not any controlled substance or paraphernalia relating to a controlled substance found in [Marberger's] vehicle or on [Marberger's] person. [Marberger] never admitted to using any controlled substance.

Trial Court Opinion, 12/11/24, 2-7 (footnotes omitted).

From this incident, Marberger was charged with five offenses. Prior to trial, he filed an omnibus pre-trial motion that sought "suppression" of the field sobriety tests, his arrest, and his refusal to submit to chemical testing. *See* Omnibus Pretrial Motion, 3/13/23. In that motion, Marberger argued that the troopers: (1) lacked "sufficient reasonable suspicion and/or probable cause to direct [him] to take field sobriety tests"; (2) did not have "sufficient probable cause" to effectuate an arrest; and (3) did not provide "proper notice" to him as it pertains to his ability to refuse chemical testing. *Id.* Ultimately, the court denied Marberger's motion, and the matter proceeded to a stipulated trial[2] whereafter the court found Marberger not guilty of two of

_____

[2] Marberger stipulated to the Commonwealth's evidence. In particular, he agreed that "if the troopers testified [at his trial], they would testify identically
*(Footnote Continued Next Page)*

the five charged offenses. After further briefing, the court ultimately found Marberger guilty of two out of the three remaining counts: (1) DUI of a controlled substance; and (2) failing to use his headlights. The court sentenced Marberger, approximately three months later, to the aforementioned seventy-two hours to six months of incarceration.

Initially, Marberger filed an untimely notice of appeal, which this Court quashed. *See* Order, 2/23/24. Nevertheless, he thereafter filed a successful petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546, which granted him the ability to directly appeal from his judgment of sentence *nunc pro tunc*. After filing his new notice of appeal, Marberger subsequently filed a statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

On appeal, Marberger presents three issues for review:

1. Was the evidence sufficient to find him guilty of DUI given that: (1) he did not admit to using a drug; (2) no paraphernalia was found; (3) he refused a blood test; and (4) there was no other indicia that he was under the influence of a drug or controlled substance?

2. Was the evidence sufficient to find him guilty of DUI when the Commonwealth could not plead or prove what controlled substance or drug he allegedly used?

3. Did the court err in denying his pre-trial motion where the Pennsylvania State Police lacked reasonable suspicion and/or probable cause to have him perform field sobriety

_____

to their testimony [at the suppression hearing.]" N.T. Trial, 7/13/23, at 16-17.

- 6 -

> tests and there was not sufficient probable cause to arrest him and transport him for chemical testing?

**See** Appellant's Brief, at 2.[3]

Marberger's first two claims challenge the sufficiency of evidence utilized in convicting him of DUI.[4] We employ a well-settled standard of review to analyze such contentions:

> the standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the

---

[3] We note that Marberger's brief violates Rule of Appellate Procedure 2119(a) insofar as it presents three questions to be argued, but only contains two argument sections. **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). Nevertheless, as issues one and two, contained within the same section of his brief, both address sufficiency, it has not impeded our review, and we address both contentions concurrently.

[4] Marberger does not challenge his other conviction related to headlight usage.

evidence.

***Commonwealth v. Kim***, 888 A.2d 847, 851-52 (Pa. Super. 2005) (citation and brackets omitted).[5] Moreover, we "consider all of the testimony that was presented . . . without consideration as to the admissibility of that evidence." ***Commonwealth v. Smith***, 568 A.2d 600, 603 (Pa. 1989). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo*[,] and our scope of review is plenary." ***Commonwealth v. Brooker***, 103 A.3d 325, 330 (Pa. Super. 2014).

Marberger was found guilty of driving under the influence of a controlled substance. The specific section he was convicted under prohibits an individual from "driv[ing], operat[ing] or be[ing] in actual physical control of the movement of a vehicle . . . [when t]he individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(d)(2). In other words, "to convict a defendant under this section, the Commonwealth must establish three elements: 1) that the defendant drove; 2) while under the influence of a controlled substance; and 3) to a degree that impairs the defendant's ability to drive safely." ***Commonwealth v. Spence***, 290 A.3d 301, 309 (Pa. Super. 2023). Rather than *per se* criminality based on blood testing, **see** 75 Pa.C.S. § 3802(d)(1),

_____

[5] Marberger's brief does not contain, nor address, this standard of review.

Section 3802(d)(2) distinctively attaches "criminal liability based specifically on evidence of impairment." **Commonwealth v. Smith**, 320 A.3d 674, 691 (Pa. Super. 2024).

Marberger's argument is that "the Commonwealth has not provided anything other than a raw opinion that [he] was under the influence of a drug." Appellant's Brief, at 5. In particular, the "Commonwealth has not stated what the identity of the drug was or provided any analysis to show that [he] was under the influence of a drug as opposed to a non-drug that affected [him]." **Id.** at 6. In effect, Marberger is suggesting that Section 3802(d)(2) requires some evidentiary support for the *specific* controlled substance for there to be a conviction, e.g., chemical testing, the recovery of drugs, residue, or paraphernalia, or by admission. **See id.; see also id.** at 8 (Marberger "believes that the Commonwealth is required to identify a controlled substance or at least a class of controlled substances beyond a reasonable doubt to meet its burden").

In support of his position, Marberger cites several decisions of this Court in which we concluded the evidence was sufficient, predicated on chemical testing and/or admissions. Marberger concedes that, although the troopers were qualified to provide lay testimony as to their observations of him on that evening, they could not identify, with any particularity, a controlled substance that he had consumed. **See id.** at 7-8. Instead, "[o]nly a toxicologist or someone with similar expertise can offer such an identification." **Id.** at 8.

Nevertheless, the Commonwealth did not offer expert testimony on the subject, which Marberger argues renders the evidence insufficient and entitles him to relief. **See id.** We disagree.

We first note that "Section 3802(d)(2) does not require that any amount or specific quantity of the drug be proven in order to successfully prosecute under that section." **Commonwealth v. Williamson**, 962 A.2d 1200, 1204 (Pa. Super. 2008). Instead, the Commonwealth is required to prove that, while driving or operating a vehicle, the accused was under the influence of a drug to a degree that impaired his ability to safely drive that vehicle. **See id.** Moreover, our Supreme Court has held that expert testimony is not mandatory in every prosecution to establish that a defendant's inability to drive safely was caused by the ingestion of a controlled substance. **See Commonwealth v. Griffith**, 32 A.3d 1231, 1238 (Pa. 2011). "[T]he need for expert testimony in subsection 3802(d)(2) prosecution must be evaluated on a case-by-case basis, taking into account not just the specific drug at issue, prescription or otherwise, but also the nature and overall strength of the Commonwealth's evidence." **Id.** at 1239. Additionally, we emphasize that Section 3802(d)(2) "does not limit, constrain, or specify the type of evidence that the Commonwealth can proffer to prove its case." **Id.**

Finally,

> "[i]n any ... criminal proceeding in which the defendant is charged with a [DUI] ..., the fact that the defendant refused to submit to chemical testing ... may be introduced in evidence along with other testimony concerning the circumstances of the refusal." 75

- 10 -

Pa.C.S.[] § 1547(e). While no presumption of guilt automatically arises from the refusal, the [fact-finder] may consider the refusal "along with other factors concerning the charge." *Id.* Otherwise, one could use drugs, "drive under the influence of those drugs, and avoid prosecution entirely simply by refusing a blood test. We refuse to countenance this absurd result." *Commonwealth v. DiPanfilo*, 993 A.2d 1262, 1268 (Pa. Super. 2010) (footnote omitted).

*Commonwealth v. Caraballo*, 325 A.3d 1025, 1031 (Pa. Super. 2024).

Recently, this Court held, in an unpublished memorandum, that "[t]he Commonwealth is not required to prove what controlled substance is causing a defendant's impairment so long as there is evidence, even if circumstantial, that the defendant is under the influence of a controlled substance." *Commonwealth v. Seibert*, 2024 WL 4794995, *2 (Pa. Super., filed Sept. 24, 2024) (unpublished memorandum) (828 MDA 2023). We find this statement of law, directly on point to the present matter, to be persuasive.[6] Indeed, *Seibert*'s subsequent citation to *DiPanfilo* is instructive: "Rather than insist on proof that may lie exclusively within Appellant's own bloodstream, which he refused to provide, we will instead turn to the totality of the Commonwealth's direct and circumstantial evidence." *Seibert*, 2024 WL 4794995, at *2, *citing DiPanfilo*, 993 A.2d at 1268 (citation and footnote omitted).

Despite Marberger's assertion, this Court has affirmed, on sufficiency

---

[6] *See* Pa.R.A.P. 126(b)(2) ("Non-precedential decisions [from this Court filed after May 1, 2019,] may be cited for their persuasive value.").

grounds, a Section 3802(d)(2) DUI conviction in which "[t]here was no evidence of alcohol use and no drug paraphernalia was found. [Additionally, the appellant] did not admit to using controlled substances." ***Commonwealth v. Harrington***, 2020 WL 1245132, *1 (Pa. Super., filed Mar. 16, 2020) (unpublished memorandum) (1841 EDA 2019) (quoting trial court opinion). Here, there was ample circumstantial evidence demonstrating Marberger's impairment from a controlled substance that impacted his ability to safely drive.

At the suppression hearing, Trooper Ogando testified that he performed a traffic stop on Marberger because he was driving without his headlights on. ***See*** N.T. Suppression Hearing, 6/21/23, at 10. Upon pulling him over, Trooper Ogando observed Marberger was jittery and had bloodshot eyes. ***See id.*** at 12. Marberger was "over-moving or wouldn't sit still, or . . . right away answer . . . the questions that [the Trooper] was asking him." ***Id.*** Marberger's eyes "were dilated and had a slow reaction to the light." ***Id.*** The Trooper knew this dilation to mean that "someone is under the influence of drugs." ***Id.*** at 13. The Trooper ascertained from Marberger that, although Marberger stated that he was headed towards Chester County, he was, at that moment, traveling in the complete opposite direction. ***See id.*** at 14.

Trooper Ogando then recalled Marberger's performance on the field sobriety tests. With the HGN test, Trooper Ogando observed a "lack of smooth pursuit of both eyes" from Marberger, a sign of impairment. ***Id.*** at 19. For the

walk-and-turn test, Marberger, as further signs of impairment, "missed heel to toe; stepped off line; spun to the right; and used his arms for balance." *Id.* at 20. Regarding the one-leg stand, Trooper Ogando detected yet more signs of impairment when Marberger "placed his foot down[,] used his arm for balance, and was swaying while performing the test." *Id.* at 21. From the results of these tests, Trooper Ogando determined that Marberger was under the influence of drugs, which impacted his ability to safely drive his vehicle. *See id.* at 22-23. After his arrest and having been read the DL-26B form, Marberger did not consent to a blood draw, instead asking whether he had the right to remain silent. *See id.* at 23-24.

Trooper Kirk, in his testimony, stated that, upon being pulled over, Marberger began "oversharing information[.]" *Id.* at 46. Marberger "was very fidgety. He couldn't sit still[ and was] moving back and forth." *Id.* He would "ramble on when Trooper Ogando would ask him very straightforward questions." *Id.* This fidgetiness "can commonly be an indicator of controlled substance usage." *Id.* Trooper Kirk conducted the ARIDE evaluation, which took place after the three field sobriety tests performed by Trooper Ogando. *See id.* at 50-51. During "[t]he lack[-]of[-]convergence" test, which involved placing a pen in front of Marberger's face and asking him to follow it, Marberger's left eye did "not converge[,]" which was an indicator of impairment from a controlled substance. *Id.* at 51, 53. Trooper Kirk also noticed Marberger's eyes as "glassy and bloodshot[,]" with dilated pupils. *See*

*id.* at 52. The second test Trooper Kirk performed, the modified Romberg balance test, resulted in Marberger swaying and experiencing eyelid tremors, which were also signs of impairment. *See id.* at 53-54.

Further conversation between Trooper Kirk and Marberger led Trooper Kirk to note that Marberger's story about his own whereabouts that evening "was kind of all over the place from what he had previously related to Trooper Ogando." *Id.* at 54. Marberger would talk very fast, repeat himself, and continue to ramble on. *See id.* at 55. Trooper Kirk concluded that Marberger "was under the influence of a controlled substance to a degree which rendered him incapable of safe driving." *Id.* After his arrest, Marberger stated, unprompted, that he was not on "any methamphetamines or hard drugs like that." *Id.* at 56.

The totality of the circumstances compels a conclusion, predicated on reasonable inferences drawn therefrom, that Marberger was impaired by a controlled substance or substances that created the condition in which he was incapable of safe driving. *Cf. Commonwealth v. Gause*, 164 A.3d 532, 539-42 (Pa. Super. 2017) (*en banc*) ("staggering, stumbling, glassy or bloodshot eyes, and slurred speech" are indicators of intoxication; "[e]vidence that the driver was not in control of himself, such as failing to pass a field sobriety test, may establish that the driver was under the influence . . . to a degree which rendered him incapable of safe driving") (citation omitted). Therefore, under these facts, there was no compelling need for the Commonwealth to adduce

- 14 -

the specific controlled substance that influenced Marberger and caused him to be incapable of safe driving. *See Seibert*, *supra*. Indeed, the troopers provided sufficient evidence, through voluminous testimony—especially relating to Marberger's driving behavior prior to being pulled over, including driving without headlights at night and weaving into the oncoming traffic lane, the troopers' personal observations of Marberger's behavior during their interactions, and Marberger's refusal to participate in a blood test—that established that Marberger was under the influence of a controlled substance that caused him to be incapable of safely driving.

As to Marberger's performance on the various sobriety tests, in which both troopers extensively testified as to the failure points they had observed, we first acknowledge that such tests

> are grounded in theories which link an individual's lack of coordination and loss of concentration, with intoxication. This inter-relationship is also recognized in what is generally accepted as the common indicia of intoxication, within the understanding and experience of ordinary people. In fact, non-expert testimony is admissible to prove intoxication where such testimony is based upon the witness' observation of the defendant's acts and speech and where the witness can opine as to whether the defendant was drunk.

*Commonwealth v. Ragan*, 652 A.2d 925, 928 (Pa. Super. 1995). Such "tests are generally accepted methods for ascertaining alcohol or drug impairment at the time of a traffic stop." *Commonwealth v. Salter*, 121 A.3d 987, 996 (Pa. Super. 2015). "The field sobriety tests are not meant to ascertain with certainty a driver's BAC, but only to provide the officer with information useful

to determine whether the driver is impaired. The determination whether to arrest for DUI must be made by the officer in light of the circumstances surrounding the traffic stop." *Id.* (citation omitted). As highlighted in their testimonies, both troopers thoroughly delved into the tests that they had Marberger perform, which, from his various failures on those tests, provided additional indicia of Marberger's impairment.

Accordingly, the evidence presented at trial, along with all reasonable inferences therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to support Marberger's conviction for DUI. *See Kim*, 888 A.2d at 851-52.

In his third claim, Marberger avers, first, that the troopers did not have requisite reasonable suspicion and/or probable cause to subject him to field sobriety tests,[7] which is a challenge to the suppression court's original determination that it was legally permissible for the troopers to request completion of those tests.[8] Review of a court's decision to deny suppression is well-settled:

> Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope

---

[7] Marberger fails to distinguish between reasonable suspicion or probable cause and their applicability to any component of the interaction between himself and the troopers.

[8] Yet again, Marberger has not provided any standard of review for appellate analysis of his claim.

of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

***Commonwealth v. Schwing***, 964 A.2d 8, 11 (Pa. Super. 2008).

Marberger concedes that he was driving in the middle of the night without his headlights on[9] and that, to the troopers, he appeared jittery, had bloodshot, glassy eyes, and a slow pupillary response. ***See*** Appellant's Brief, at 12. Nevertheless, Marberger argues that, pursuant to this Court's unpublished decision in ***Commonwealth v. Clark***, 2024 WL 3718164 (Pa. Super., filed Aug. 8, 2024) (unpublished memorandum) (1044 MDA 2023), "there was not sufficient evidence to have [him] exit the vehicle and perform field sobriety tests." Appellant's Brief, at 12. Marberger does not elaborate beyond providing a block quotation to this unpublished case; therefore, we find that Marberger has waived review of this component of his issue.[10]

_____

[9] ***See*** 75 Pa.C.S. § 4302(a)(1) (requiring the use of headlights between sunset and sunrise). "Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." ***Commonwealth v. Harris***, 176 A.3d 1009, 1019 (Pa. Super. 2017)

[10] "When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof." ***Commonwealth v. Sanford***, 445 A.2d 149, 150 (Pa. Super. 1982) (citations omitted). Nevertheless, Marberger's citation to ***Clark*** is inapposite because therein, this Court found there to be reasonable

*(Footnote Continued Next Page)*

As to the second part of his third claim, Marberger suggests that "there was not sufficient cause to arrest [him] and transport him for chemical testing." *Id.* (capitalization altered). Marberger cites to the implied consent statute located at 75 Pa.C.S. § 1547(a)[11] and a decision from our sister court, the Commonwealth Court,[12] to conclude that Marberger's observed driving and subsequent actions, in the absence of any paraphernalia, odors, residue, or admissions, were not enough for the troopers to conclude that he had been using a controlled substance. *See id.* at 14. Although, given his terseness, the

_____

suspicion of DUI, allowing for the administration of field sobriety tests, predicated on, *inter alia*, that appellant's "red, glassy, bloodshot, and watery" eyes and confused state. 2024 WL 3718164 at *3. Here, as previously stated, Marberger admits that he "appeared jittery and had bloodshot, glassy eyes[,] and [a] slow pupillary response[,]" Appellant's Brief, at 12, which, under **Clark**, is sufficient to constitute reasonable suspicion for the officers to thereafter proceed to field sobriety testing.

[11] We note that, during the pendency of this appeal, our Supreme Court decided **Commonwealth v. Hunte**. --- A.3d ---, 2025 WL 1703981 (Pa. 2025) (16 MAP 2023). Therein, the Court determined that "Section 3755[, the "emergency room counterpart" to Section 1547,] is facially unconstitutional under the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution." **Id.** at *25. Nevertheless, there is nothing in **Hunte** that suggests the invalidity of Section 1547. In any event, although Marberger refused chemical testing, he was convicted under Section 3802(d)(2), which, as distinct from Section 3802(d)(1), does *not* require any blood-based evidence of a controlled substance. Thus, any invocation by Marberger of Section 1547 in support of his underlying argument is immaterial because, as previously established, ample non-blood-based evidence existed of his impairment.

[12] While possibly persuasive, we emphasize that we "are not bound by the decisions of a sister court." **Conrad v. Bundy**, 777 A.2d 108, 112 (Pa. Super. 2001).

precise thrust of his argument is unclear,[13] the totality of the circumstances clearly demonstrates that: (1) the troopers, observing Marberger driving without headlights in addition to weaving into the oncoming lane of traffic, both violations of the Pennsylvania Motor Vehicle Code, effectuated a legal traffic stop, **see Harris**, 176 A.3d at 1019; (2) upon approaching and conversing with him, Marberger's reported condition, including, *inter alia*, his bloodshot and glassy eyes, jittery body language, inability to sit still, talkative and oversharing manner, and contradictory explanation as to his whereabouts, provided reasonable suspicion, under a totality of the circumstances, for the troopers to engage in a more detailed post-stop investigation, **see, e.g.**, **Commonwealth v. Rogers**, 849 A.2d 1185, 1189 (Pa. 2004) (allowing an officer to detain an individual to conduct an investigation "if that officer reasonably suspects that the individual is engaging in criminal conduct[]"); and (3) Marberger's performance on the field sobriety tests, when coupled with other observations evidencing impairment, provided probable cause for the troopers to determine that he was under the influence of a controlled substance rendering him incapable of safe driving, **see, e.g.**,

---

[13] In this subsection of his third claim, paralleling the structure of the previous subsection in which we found waiver, Marberger's brief contains what is essentially one block quotation and three explanative, conclusory sentences. **See** Appellant's Brief, at 12-14. We interpret and analyze his underlying contention as best as possible under the circumstances, but express our displeasure in his lack of clarity.

*Salter*, 121 A.3d at 997 (failing field sobriety tests is not necessary for probable cause determination, but performing poorly may be sufficient for impairment finding) (citation omitted). Accordingly, the troopers, based on the facts and circumstances within their personal knowledge throughout their encounter, first had reasonable suspicion to extend the lawful traffic stop to investigate whether Marberger was engaged in DUI, and, thereafter, after compiling more information as to Marberger's level of impairment, they had probable cause to arrest Marberger on suspicion of DUI. *See, e.g.*, *Commonwealth v. Hilliar*, 943 A.2d 984, 994 (Pa. Super. 2008) ("Probable cause exists where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under the influence of . . . a controlled substance.") (citation omitted). As such, the suppression court's denial of relief was supported by the record and free of legal error, and Marberger is due no relief on this claim.

As none of his issues warrant relief, we affirm Marberger's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/25/2025